(No. 76-CC-2009—)

Daniel M. Rubino, Claimant, *v.* State of Illinois, Respondent.

*Opinion filed February 26, 1979.*

RICHARD E. GORMAN, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; JAMES O. STOLA, Assistant Attorney General, for Respondent.

HOLDERMAN, J.

This is a claim for back pay by a State employee who was unlawfully discharged for a period of time.

The facts are not in dispute. The Circuit Court of Cook County ruled, in an administrative review case, that the Claimant was unlawfully discharged from his position as a certified Deputy Boiler Inspector with the Illinois Department of Law Enforcement for a period of December 28, 1972, to July 16, 1975.

Claimant would have earned $33,454.50 during that period had he not been unlawfully discharged.

During the period of the discharge, Claimant tried but was unsuccessful in obtaining employment as a boiler inspector. He, therefore, took any job he could get and worked at various times as a boilermaker supervisor, common laborer, welder, rigger, ironworker, and boilermaker, much of which work was dirty, heavy, and hazardous, and some of which work was performed at night. All of the jobs taken by Claimant were in the boilermaker field.

During the period of discharge, Claimant earned from all emloyment, the total sum of $50,448.38.

Both sides concede the principal that it is the duty of an employee to mitigate damages from an unlawful discharge by seeking employment during the period of discharge but the parties disagree as to the applicabil-

ity of that rule in two ways:

(1) Whether money earned by Claimant during the period of discharge, at night during night shifts may properly be used in mitigation; and

(2) Whether the work performed by Claimant during the day was of such a nature that the same should not be considered as mitigating.

As to the first question, the facts were that during the period in question, Claimant worked at various times at a night shift and past the normal five p.m. working hour. During this period, Claimant usually worked only one shift so that, it may be presumed, the night shift employment was the Claimant's primary employment during those various times. However, sometimes he worked a day and night shift the same day. The night shift work amounted to $36,830.97 in total compensation during that period.

Prior to his discharge, Claimant earned, part-time in the evening, as a consultant, as much as $15,650.00 per year (1972).

Claimant argues that not all earnings during a period of wrongful discharge are to be used in mitigation but only those earnings which would have been incompatable with the prior employment and cites as authority *People ex rel Bourne v. Johnson, 32 Ill. 2d 324, 205 N.E.2d 470 (1965).*

The Bourne case involved a similar situation where the City of Chicago who wrongfully discharged an employee claimed a credit on a back pay award for subsequent earnings of the employee from a secondary job which was compatible with the principal employment. The Court quoted with approval the case of *Sanders v. Schenley Products Co.,* 108 Fed. 2d 23, which states:

"On wrongful discharge from an employment of this character the damage to the employee is measured by the agreed wage during the remainder of the term, reduced by such part of his earnings during the same period as he could not have earned if he had continued in the same employment... The amount recoverable is to be reduced by his other earnings during the period of separation insofar as such income would have been incompatible with performance of his duties to his erring employer. But this does not necessitate mitigation of the recoverable salary by earnings compatible with and being received during the employment from which the employee is wrongfully discharged ... As was aptly observed by the Appellate Court, the industrious holder of two compatible jobs who is wrongfully discharged from one should not be penalized by permitting the wrongdoer to deduct from the damages for which he is liable the earnings of the second job during the period of the wrongful discharge."

We agree that the rules set out in the Bourne case are applicable here. In the case at bar, it is clear that the work performed by Claimant at night could have been earned by the Claimant during the time of his employment by the State. In fact, Claimant did earn substantial money part time during his State employment (although with a different employer and in a different capacity than after the discharge).

Respondent argues that the night shifts worked by the claimant during his discharge must be used as a set off because this was his only and primary job during that period. We agree that the night shift work, when performed, was Claimant's primary source of income. But whether or not it was his primary source of income is not the test of whether the income should be used as mitigation. By the case law, the test is compatibility with the State employment. In view of the finding of this Court that the night shift work could have been worked concurrently with the State job, it is the opinion of this Court that the income from that night work should not be used as a set off.

As to the second issue, the employment during the day, Claimant argues that that employment was of a much more severe nature and is therefore not to be used

in mitigation and cites, in support of this proposition, the case of *Williams v. Chicago Coal Company, 60 Ill. 149 (1871).* The Williams case is authority for the proposition that where employment is different in character and more severe in the performance, the same should not operate as mitigation of damages in a case of wrongful discharge by a private employer.

We need not comment on this proposition of law cited inasmuch as we believe that the facts in this case show that the labor was not so different in character that it should not operate as mitigation.

Claimant's work during the period of discharge was mainly as a boilermaker. The capacities in which he worked, although more difficult physically, and hazardous, heavy and dirty, were in the same field as a boiler inspector, his State job. As an inspector, it is presumed by the Court that Claimant would have had to place himself in positions that were dirty and hazardous in order to perform his inspection role. The same or similar training and skill and experience was required. To operate as mitigation an employment need not be identical to the employment from which an employee was discharged. In this case, the day work, amounting to $13,617.41 should operate as a set off against the full claim of $33,454.50.

Claimant is hereby awarded the sum of $19,837.09, less deductions as determined by the Department of Personnel for State Employees Retirement, F.I.C.A., Federal Income Tax, and State Income Tax.