(No. 81-CC-0079—)

NORMAN VAN NATTAN, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 17, 1981.*

WILLIAM M. GIFFIN, for Claimant.

TYRONE C. FAHNER, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

ROE, C. J.

Claimant brought this action to recover lost wages which allegedly were due him pursuant to certain re-employment rights derived from various legal proceedings. The case was set for hearing and heard on October 23, 1980, before Commissioner Robert A. Barnes, Jr., of the Court of Claims. No additional testimony or evidence was produced other than the exhibits, affidavits, and stipulations filed at said hearing. Based upon that record and the report of the commissioner, we find the facts to be as follows.

Claimant was employed by the Illinois State Fair Agency. The record is silent as to the exact position he held. His position was abolished by an alleged reorganization of the agency by its manager, Nicholas Stone, on or about February 28, 1977. The record is somewhat vague as to exactly what legal proceedings Claimant brought in seeking redress. However, it is undisputed that he obtained re-employment rights through the Civil Service Commission of the State of Illinois beginning on or about January 1, 1978. The State Fair Agency and Nicholas Stone were notified by appropriate parties of Claimant's right to re-employment, but Claimant was not actually re-hired until November 1, 1978. Claimant is seeking back wages for the interim period.

The reason and circumstances behind the ten-month delay in rehiring Claimant appear at paragraphs six and seven of Claimant's sworn affidavit which is a part of the record. Said paragraphs essentially read as follows:

"6. That subsequently (after January 1, 1978), it developed that Affiant was the victim of a program initiated by Nicholas Stone, as the State Fair Manager, to keep him unemployed or from being re-employed by the State Fair Agency.

7. That the said Nicholas Stone was so definite in his determination to keep from rehiring Affiant that at the time he was directed to re-employ him by the Department of Personnel and the Civil Service Commission, he contumaciously refused to abide by their orders; and, that the Affiant was not able to return to employment until said Nicholas Stone resigned as State Fair Manager."

It is undisputed that the above statements are true. No evidence was offered to contradict them.

Attached to Claimant's complaint is a joint stipulation between Claimant and John R. Block, the Director of the Department of Agriculture, State of Illinois. Said department has now assumed jurisdiction over the State Fair. By stipulation Claimant and Director Block agreed on the amount of employment benefits that Claimant

would have obtained had he been rehired as of January 1, 1978 (the date which both parties agreed Claimant's re-employment rights accrued). The breakdown was stated essentially as follows:

| | Period from 1/1/78 to 11/1/78 | |
|---|---|---|
| Salary | $13,970.00 | |
| Retirement | 611.79 | (7.3%) |
| Retirement | 433.63 | (7.76%) |
| Social Security | + 845.19 | |
| | $15,860.71 | |
| Unemployment Compensation | − 3,510.00 | |
| | $12,350.75 | |

From Claimant's affidavit it appears he met his burden of proof with respect to meeting the requirement that he make sufficient efforts to mitigate his losses and Respondent does not contest this.

Claimant and Director Block also stipulated that Claimant is entitled to the salary payments for such period. The claim was filed in this Court because the fiscal years during which those payments would have been made have closed. Claimant alleged in his complaint that he requested payment from the Department of Corrections but such request was refused on the grounds that the funds appropriated for such services of the State Fair Agency for such payments have lapsed.

Thus, on the surface the facts would seem to present an ordinary lapsed appropriation case. However, the evidence shows that the State Fair Agency lapsed no money for the period at issue, nor was the two percent transfer available as that agency had totally exhausted its funds. In fact, as numerous decisions of this Court on lapsed appropriation claims against the same agency arising out of the same period of time have shown, the State Fair Agency incurred many obligations far in excess of their appropriation for the period.

This issue, therefore, with which we are again confronted is whether or not the Court of Claims has any authority to direct the payment of this claim, sounding of "lapsed appropriation" where no funds from which it would have been paid actually lapsed.

The law is quite clear on this issue. Even though Claimant in equity and good conscience appears to be owed his lost wages we are constrained by law to deny his claim. Where insufficient funds lapse from which payment of a claim would have been made, absent the showing that the claim falls within the narrow exception of being expressly required by law, the claim must be denied. In connection with this we point out that article VIII, section 2(b) of the Constitution of the State of Illinois provides that the General Assembly by law shall make appropriations for all expenditures of public funds by the State. If this Court were to grant an award in the case at bar we would in effect be appropriating funds. Said authority lies solely with the Legislature. The fact that the Legislature honored numerous other claims arising out of the same period as the instant claim and against the same agency by the passage of a special appropriation bill, claims which we had denied, is further support for this position.

It is hereby ordered that this claim be, and hereby is, denied.