(No. 82-CC-0489—

JAMES PAUL, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 15, 1984.*

JAMES M. DRAKE, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

ROE, C.J.

This is a claim by a former employee of the Respondent for back wages due as the result of a wrongful

discharge. The Claimant, James Paul, was suspended on November 1, 1980. He returned to work on December 1, 1980 and was again suspended on December 1, 1980, pending discharge, but was paid from December 1, 1980, until December 11, 1980, at which time his discharge became effective. He had been employed as a Community Service Supervisor II with the Illinois Commission on Delinquency Prevention. The Civil Service Commission, after lengthy hearings, returned him to work on July 16, 1981. It found insufficient evidence to sustain all but one charge and only ordered a 30-day suspension on that charge.

On September 21, 1981, the Claimant filed this claim. Attached to the complaint as Exhibit B is a letter from the Department of Children and Family Services which was stipulated to be part of the record. It shows that Claimant's lost income for the period of December 11, 1980, through June 30, 1981, was $13,354.62, based on a daily rate of $85.33. This figure includes $1,023.96 for vacation days he would have earned over that period had he worked and not used them.

A hearing was held on August 12, 1982, and evidence as to the amount of damages and mitigation efforts was adduced. However, during the time his claim was pending in the Court of Claims, the Claimant was pursuing an administrative review action in the Circuit Court of Sangamon County seeking reversal of the 30-day suspension sustained by the Civil Service Commission. After the hearing on damages in this Court and during the time the parties were briefing this claim, the circuit court, on September 14, 1982, reversed the 30-day suspension order, thereby clearing the Claimant of all charges.

Three weeks after the circuit court's decision the Claimant moved to amend his complaint to claim an

additional sum of $2,559.90 based on $85.33 per day for the 30-day period of the month of November 1980. The record indicates that the motion was not ruled on. The Respondent did not file a separate pleading to the motion but did address comments to it in a replication brief. Therein the Respondent raised several objections including (1) that the issue of compensation for November 1980 was being untimely raised, (2) that the record makes no mention of compensation due for that month, and (3) that Claimant is seeking $2,559.90 when in fact the document Claimant offered as a departmental report shows that Claimant was only earning a monthly salary of $1,856.00.

Pursuant to sections 2—616 and 2—617 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—616, 2—617), amendments to a complaint may be made at any time. Perhaps a hearing on the Claimant's motion would have been proper in view of the objections the Respondent expressed. However, we find that the Claimant has filed sufficient documentation and justification for us to allow him to amend his complaint to include the amount due as the result of the reversal of his 30-day suspension. Our granting his motion would best serve the interests of judicial economy and efficiency, for this claim has been pending for some time and it is quite certain that the Claimant would file another claim were we not to allow him to include it in the case at bar. We do note the Respondent's objections and find the additional amount that the Claimant would have earned for the month of November 1980 to be $1,856.00. In addition, we point out to the parties that this opinion will not become final for 30 days. Both parties have that period within which to ask for a rehearing on the matter if they so desire. Motion granted.

The threshold issue which must be decided concerns the availability of appropriations with which the employee could have been paid had he not been wrongfully discharged. The record indicates that the employing agency of the Claimant, the Commission on Delinquency Prevention, was abolished by the legislature effective July 1, 1981. Prior to the layoff of all the agency's employees on said date, $24,300.00 was paid out to the staff to compensate for unused vacation time. This liquidation left a total of $26.19 in the line item for personal services (from which line item the Claimant should have been paid). There is nothing in the record to indicate that any funds were available to be transferred into the personal services line item had such a transfer been done in time. In summary, the record shows that the agency spent virtually all of its funds prior to its extinction and would have had none left to pay Mr. Paul.

The volumes of the Court of Claims Reports are replete with cases where agencies have incurred obligations in excess of the amounts appropriated to them and the creditor has sought relief in this Court. It is a fundamental principle in this Court that such claims must be denied. The case of *Van Nattan v. State* (1981), 34 Ill. Ct. Cl. 260, is very similar. There the Claimant's job was abolished and he obtained reemployment rights through the Civil Service Commission. However, the agency did not reinstate him until 10 months later. The agency lapsed no money with which he could have been paid. The Court stated:

"The law is quite clear on this issue. Even though Claimant in equity and good conscience appears to be owed his lost wages we are constrained by law to deny his claim. Where insufficient funds lapse from which payment of a claim would have been made, absent the showing that the claim falls within the narrow exception of being expressly required by law, the claim must be denied. In connection with this we point out that article VIII, section 2(b) of the Constitution of the State of Illinois provides that the General Assembly by law shall make appropriations for all expenditures of public funds by the

State. If this Court were to grant an award in the case at bar we would in effect be appropriating funds. Said authority lies solely with the Legislature." (34 Ill. Ct. Cl. 260, 263.)

In the case at bar the agency spent all of the funds appropriated to it for personal services by the legislature and if we were to make an award we would essentially be providing the agency more money—in effect appropriating funds.

However, section 11(b) of the Personnel Code (Ill. Rev. Stat., ch. 127, par. 63b111b), provides that every employee reinstated for the period for which he was suspended, discharged, or improperly laid off shall receive full compensation for such period notwithstanding the fact that any person was employed to perform any duties of such employee during the time of such suspension, discharge or layoff. This seems to us to evince a legislative intent that such a person be paid regardless of whether or not the agency spent the money. We find that payment of any amount of back wages due the Claimant under the facts of this case to be expressly authorized by law.

In so finding we know that we are overruling the *Van Nattan, supra,* decision and finding yet another set of facts within the narrow exception to the general rule. Mr. Van Nattan's claim was presented to the legislature following our decision, the legislature considered the matter, and Mr. Van Nattan was eventually paid. Because of the constitutional allocation of authority to the legislature noted in the above quoted passage from *Van Nattan, supra,* we are mindful that we must exercise extreme caution in deciding what obligations are expressly authorized by law. We think the approach taken here is correct and proper from both legal and policy points of view. Our decision, however, must be limited so that

it only applies so as not to bar back pay up to the date the legislature refused to fund the agency's operations. Even though the Claimant was ordered reinstated two days after the agency's abolition, any portion of the claim relating to that two-day period must be denied.

Having found that this claim is not barred by the insufficiency of lapsed funds we turn now to the issue of mitigation. The facts with respect to the Claimant's mitigation of his losses are as follows. James Paul was in his late fifties during the relevant time period. He had spent virtually his entire life in youth work, 17 years of that time with the delinquency programs with the State of Illinois. In mitigating one's losses in a case such as this, one is required to seek relatively similar work within the same general locality. The Claimant applied for work at Elliot's Children's World, the Illinois Department of Children and Family Services, the Illinois Department of Corrections, the Pekin Housing Authority, the Tazewell County Court Services, and he tried to get help through his State representative.

Also, he sought work in private industry. He went to a well-placed friend at Midwest Solvents but was unable to get work. He applied at the Private Industries Corporation, Greater Peoria Contractors and Suppliers Association, Johnson's Moving and Storage, Maloof Real Estate Company, and Cabinet Pack. Finally, he was able to get part-time work from a friend at Cabinet Pack and earned a total of $618.00.

Additionally, the record indicates that the Claimant spent a good deal of time preparing for litigation and defending himself. We have previously determined that such efforts are relevant to the issue of mitigation.

Due to the nature of the charges levelled against him

which caused his suspension and discharge (which charges need not be described herein), however, he had in reality no chance of obtaining youth-oriented employment. Upon telling other prospective employers about the circumstances under which he was forced to leave his job with the Respondent, they too were not receptive to hiring him. We feel we comprehend the situation and understand the prospective employers' reactions and the futility in Claimant's efforts. In conclusion, considering the Claimant's age, his occupation, the general state of the economy (which we take judicial notice of), the nature of the charges against him, and the time spent in refuting those charges, we find that the Claimant has met his obligation to mitigate his losses.

The final issue on the merits of the claim involves vacation pay as a proper element of damages in a claim seeking back wages as a result of a wrongful discharge. Our research indicated that the question has not previously been presented to the Court under the facts of this case. It is the Claimant's position here that had he not been wrongfully discharged he would have earned vacation days and would have had the right to have them liquidated by compensation upon the agency's abolition just as his co-workers were paid.

In *Harrington v. State* (1974), 30 Ill. Ct. Cl. 67, the claimant sought payment for accrued vacation time pursuant to Personnel Rule 3—290 which provides as follows:

"Salary in lieu of vacation: No salary payment shall be made in lieu of vacation not taken except on termination of employment, in which case the effective date of termination is not extended by reason of said salary payment."

The Claimant in *Harrington, supra*, had changed employment from one agency of the State to another. The issue therein was whether his employment had terminated or

he had merely transferred to another job. In granting payment for accrued vacation time, the Court decided that the Claimant's employment had in fact been terminated and his situation fell within the rule. The Claimant was not seeking redress for wrongful discharge but merely payment for days actually accrued. In the case at bar, Mr. Paul was paid for vacation days actually accrued up to the time of his discharge.

Although *Shimeall v. State* (1979), 32 Ill. Ct. Cl. 760 would appear to be directly on point, upon careful analysis it is clear that the issue was not raised by the Respondent nor was the Court apprised of anything in the record to indicate the Claimant should be barred from receiving vacation pay as an element of damages in a wrongful discharge claim. In a case involving much the same facts as *Shimeall, supra,* this Court in *Shaw v. State* (1981), 34 Ill. Ct. Cl. 126, denied vacation pay. The Claimants in those cases had been wrongfully discharged and ordered reinstated. Upon reinstatement, the agency credited the Claimants with the maximum amount of vacation days they were by rule allowed to carry. Although the rationale used by the Court in denying the claim for vacation days in *Shaw, supra,* was much more involved, it can basically be summarized that the Claimant therein was made whole by the restoration of the agency of the vacation days upon the Claimant's reinstatement. Although it was shown that the Claimant would have earned more vacation time than that with which he was credited had he worked over the entire period of his wrongful discharge, he would have either used the balance of the vacation days or lapsed them during that time. Thus he actually lost nothing.

In *People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 205 N.E.2d 470, the supreme court stated, "The

theory underlying a suit for back salary is to make the employee whole—to compensate him to the extent that the wrongful deprivation of salary has resulted in financial loss". It is the Claimant's position that he was deprived of his job and but for that deprivation he would have worked and earned vacation days. Had he worked and earned vacation days he would have been terminated, along with the rest of the agency's employees, at the end of June 30, 1981. Just as the other employees were paid for accrued vacation time upon their termination, he, too, would have been entitled to such payment. Moreover, section 11(b) of the Personnel Code (Ill. Rev. Stat., ch. 127, par. 63b111b) provides that upon reinstatement one is to be paid lost benefits, and the right to earn and be compensated for vacation time is certainly a benefit of the Claimant's employment.

However, upon close analysis it is clear to us that the Claimant has suffered no loss with respect to the vacation days. The record shows that during the month of December 1980, when he was removed from the payroll, he was paid for 54 vacation days, said payment totalling $4,607.98. A person with the Claimant's length of tenure with the State earns 20 vacation days per year. Although the record is silent on the matter, we will give the Claimant the benefit of the doubt and assume that of those 54 vacation days for which he was paid he earned only 14 of them in calendar year 1978. Pursuant to the Personnel Rules, specifically 80 Ill. Ad. Code, ch. 1, section 303—250, he could have only carried that many days up to December 31, 1980, after which he would have lapsed the 14 days. Had he actually worked continuously through June 30, 1981, he would have only earned 12 more vacation days. Therefore, he would have either lost the 14 days or actually taken them off but only gained 12 more. Were we to pay him for the 12 additional days he would in

effect be made more than whole because he would be paid for the 14 days he would have either used or lapsed and 12 additional days.

In summary, following *People ex rel. Bourne v. Johnson, supra,* in order to "compensate the claimant to the extent that the wrongful deprivation of salary has resulted in financial loss" we are treating him as if he had been continuously employed. When the situation is viewed as such he has already been compensated for 14 days which he would have either actually taken off or lapsed. He would not have been paid for those 14 days had he been continuously employed. In our view, those days more than cancel out the 12 more he would have earned had he worked and could have been compensated for had he not taken them off.

In conclusion, the Claimant is hereby awarded the sum of $13,578.66, plus employer contributions and less employee deductions as more fully set forth in the appendix attached hereto and incorporated herein. We arrived at the gross figure by adding what the Claimant would have earned for the month of November 1980, the balance of the month of December 1980, for which he has not been paid, and what he would have earned from January through June 1981, and then subtracting what he actually earned in mitigation of his losses.

### APPENDIX A

Identification of State Contributions and Deductions from Back Salary Award

To the State Employees' Retirement System:

| | |
|---|---|
| Employee's contribution to State Employees' Retirement System | 1086.29 |
| Employee's contribution to FICA | .00 |

|                                                              |          |
| ------------------------------------------------------------ | -------- |
| State's contribution to State Employees' Retirement System   | 1018.40  |
| State's contribution to FICA                                 | .00      |

To Illinois State Treasurer to be remitted to Internal Revenue Service:

|                                    |          |
| ---------------------------------- | -------- |
| Claimant's Federal Income Tax      | 2715.73  |

To Illinois Department:

|                                  |         |
| -------------------------------- | ------- |
| Claimant's Illinois Income Tax   | 407.36  |

To the Claimant:

|             |          |
| ----------- | -------- |
| Net salary  | 9369.28  |

Total award $14597.07