(No. 79-CC-0621–

KARL NOLTEMEIER, Claimant *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 15, 1981.*

*Opinion on rehearing filed January 11, 1983.*

*Order filed January 30, 1986.*

CORNFIELD & FELDMAN (JACOB POMERANZ, of counsel), for Claimant.

TYRONE C. FAHNER, Attorney General (FRANCIS M. DONOVAN, Assistant Attorney General, of counsel), for Respondent.

Roe, C.J.

This claim is based upon the violation of Claimant's employment rights under the State Personnel Act (Ill. Rev. Stat., ch. 127, par. 63 *et seq.*), as found by the Illinois appellate court decision, in that Claimant was wrongfully laid off on November 30, 1973, and reinstated on January 1, 1978, by the Department of Mental Health and Developmental Disabilities.

It has been stipulated that during the time involved Claimant would have received a gross salary of $78,355.40, subject to additions and deductions as required by law. The areas of disagreement in this case concern whether or not Claimant is entitled to any credit or payment for:

   (i) vacation days in 1974 and 1975;

   (ii) personal leave days for 1974 through 1977;

   (iii) holidays for 1974 through 1977;

   (iv) the costs of medical and hospitalization insurance during the layoff period;

   (v) interest from October, 1976, through April, 1979;

and whether or not Claimant's income from private practice should be used as a setoff against any award.

As to the issue of vacation days, we note that Claimant has been credited by the Department with 40 days' vacation time, for the years 1976 and 1977 upon his return to active employment status. The claim is for compensation for days allegedly accrued in 1974 and 1975. We have recently decided this issue in *Shaw v.*

*State* (1981), 34 Ill. Ct. Cl. 126, and in accordance with that decision find that Claimant is not entitled to any compensation for the vacation days allegedly accrued in 1974 and 1975.

Although the issues of compensation for personal leave days and holidays were not present in *Shaw, supra*, we find the reasoning in that case also applies to the case at bar. Rule 3—125, dealing with "leave for personal business," states in part,

"Accruals or credit of permissible time off for personal leave shall not be carried over the following calendar year, nor shall any employee be entitled to payment for unused personal leave upon separation . . . ."

No provision exists for liquidation of such days other than actually taking the time off. Therefore unused personal leave days expire at the end of each calendar year. To grant compensation for such time would be putting Claimant in a better position than if he had actually worked during the period. By denying Claimant said compensation he is still getting what would be due him. The same reasoning applies to compensation for holidays.

We reserve judgment on the issue of whether or not Claimant is entitled to medical and hospitalization insurance and direct that the Clerk of the Court of Claims set this claim for oral argument at the next session of the Court in Chicago.

The next item of damages Claimant seeks is interest from October 1976, through April 1979. It has long been held that the State of Illinois is not liable for the payment of interest or attorney fees in the absence of a statute expressly subjecting it to such liability. (*Mooney Construction Co. v. State* (1982), 35 Ill. Ct. Cl. 116; *Caymen Associates Ltd. v. State* (1980), 33 Ill. Ct. Cl. 301.) Petitioner cites Ill. Rev. Stat., ch. 77, sec. 7 as

authority. We do not consider said statute to have any applicability to claims against the State. No express authority was cited by either party and we can find none. We also take notice of the fact that various bills have been introduced in the legislature to subject the State to the payment of interest on awards made by this Court in recent years and all have failed. Claimant's claim for interest is hereby denied.

The final issue of damages involves Claimant's efforts to mitigate the loss of his salary during the period of his wrongful discharge.

In his brief Claimant acknowledged that he had a duty to mitigate and relies on the record as proof that he met that obligation. The position of Respondent is basically twofold. First, Respondent contends that Claimant's efforts were insufficient. Second, it argues that Claimant should not have limited his efforts to the area of clinical social work.

It is well settled that State employees must do all in their power to mitigate their losses arising out of their being wrongfully discharged. (*Nagle v. State* (1975), 31 Ill. Ct. Cl. 74; *Stevens v. State* (1977), 31 Ill. Ct. Cl. 519.) If an employee obtains other employment after a wrongful discharge, he is ordinarily chargeable with the income from that employment, so that his damage claims against his former employer are reduced by what he makes in his new job. The reasons behind this principle include the fact that the wrongful discharge has ordinarily given him the free time to accept a new job, which becomes a substitute for the old, and the feeling that even though the employee was not at fault in the discharge he should not recover a windfall for being idle among other reasons.

However, there often exists the situation where, as in the case at bar, an employee held more than one job at the same time. Upon being wrongfully discharged he continues to work at the second job. Similarly, an employee may obtain a new job following the wrongful discharge that is not a substitute for the old job but one which he could also have held while working at the old job. In both such instances the employer is not entitled to a credit for income from the second job because the income it produces was not available as a result of the wrongful discharge. See *People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 205 N.E.2d 470.

The employer is entitled to a credit, not only for income from jobs the employee actually obtained in substitute for the old job, but also for appropriate income he could have obtained by reasonable effort. The employee is not charged with any income he could have earned but only income he could have earned in similar employment with similar conditions of employment and rank and in the same locality. Where, however, the employee actually earns wages, the employer is credited whether those wages came from similar employment or not; but where the employer seeks a credit for what the employee could have earned, the similar employment and locality considerations apply. Such conditions are, of course, merely factors in judging the reasonableness of the employee's efforts to minimize his damages and they do not form an absolute rule.

In the case at bar, Claimant was employed by the State as a clinical social worker. Upon becoming laid off he testified that he sought other employment similar to the position he held with the State. He stated he wrote 6 to 10 letters to employers in the same geographic area and one to a facility in Indiana. He also made

approximately 15 visits to potential employers, mostly in 1974 and 1975. He checked out help wanted advertisements in professional journals. He was registered with the State of Illinois job service throughout the layoff period but only checked with them during the time he was being paid unemployment compensation. Claimant was unsuccessful in obtaining another job although he turned down no offers.

Both during his employment with the State and subsequent to his being laid off he was engaged in private practice on a part-time basis. Upon his discharge he claims to have made efforts to expand his practice. In this attempt he stated that he notified approximately 5 to 10 people who were his usual referral sources that he had more time available. This was done right after his layoff and thereafter once every four to six weeks.

With respect to Claimant's private practice, it is Respondent's position, as stated in its brief, that Claimant's entire practice income must be included as a setoff. Respondent asserts a novel argument that Claimant was a "professional" and, because he is such, his employment should be viewed as including both his job with the State and his private practice. Essentially Respondent would have us draw no distinction between the two jobs but regard them as one—that of Claimant's "profession." The distinction we pointed out previously between an old job and a concurrent second job or a nonsubstitute new job would be thus inapplicable to the case at bar. Respondent would limit that concept to occupations it refers to as "trades" as opposed to professions. Respondent reasons that engaging in a profession involves certain economic risks, basing income on intelligent risks such as those incurred in a recession. Conversely a professional can also reap

economic benefit from a large number of "cases," regardless of economic conditions. Success is usually based on the relative degree of skill of a professional and to allow a professional to benefit as a tradesman, Respondent concludes, would be a derogation of the "reasonableness" concept involved in mitigation.

We cannot accept this position. Respondent's theory would virtually eliminate all causes of action by any professional against an employer. The employer could discharge any "professional" at whim and if the diligent efforts of the professional to mitigate proved fruitless the employer could defend by saying that is just a risk of the profession. While that argument may apply to some situations involving professionals, *e.g.* in a doctor-patient relationship where the patient discharges his doctor, it does not apply to an employer-employee relationship such as the one at bar. The State was not a "client" or "patient" of Claimant but his employer and according to the terms of his employment he had certain rights.

We find that the same two-job distinction we discussed previously applies here. The issue becomes whether or not the two were incompatible. The evidence shows that they were, in that Claimant maintained his private practice before discharge, during the laid-off period, and following reinstatement. The next issue is whether or not there was an increase in the private practice income which resulted from the increased time Claimant had to devote to it during the layoff. Any increase would be credited to the State as a setoff. The evidence showed that for the four years prior to his discharge he netted $32,476.00 from private practice, based on 3,863 hours. During the four years of his discharge he netted $32,469.00 from 2,763 hours of

private practice. The time spent is the more important factor of the two, for that was what became available to Claimant to use as a result of his discharge. Had he worked more hours during the discharge period we would setoff a corresponding amount of the income derived therefrom in mitigation. However, he spent less time at his secondary job and thus there is no setoff.

Having found no setoff due the State from income earned by Claimant during his discharge, we turn to the efforts of Claimant to mitigate. We reject Respondent's arguments to the effect that Claimant should have sought work unrelated to the position from which he was wrongfully discharged and hold, consistent with our previous discussion of the duty to mitigate, that he need only seek similar employment. That is the law in the private sector and we see no reason that public employees should be held to a different standard.

We do, however, feel that Claimant did not do all in his power to mitigate damages. Claimant had four years in which to seek comparable employment. Although we take notice of the then state of the economy and all the other factors related to his occupation, we feel that more effort should have been made in that length of time. As Respondent correctly points out, having found inadequate mitigation it becomes the Court's prerogative to fix the damages and make an award which we believe to be fair to all concerned in view of the circumstances. In doing so there is no empirical formula that can be applied. We find that $45,000.00 is a fair and just sum.

During the layoff period Claimant received $2,470.00 in unemployment compensation benefits. In the past this Court has applied such sums as a setoff to any awards, the reason being that it represented monies already paid out by the State as a result of the wrongful

discharge or improper layoff and to ignore it would be to make Claimant more than whole. According to section 900 D. of the Unemployment Insurance Act (Ill. Rev. Stat., ch. 48, par. 490 D.), back pay awards representing compensation for a period of time over which a person was receiving unemployment compensation should be made by check payable jointly to the individual and the director of the Department of Labor. Such payments were not previously made by this Court because it was thought that to do so would have the result of transactions cancelling each other out. However, as a result of a recently decided claim, *Illinois Department of Labor v. State*, 34 Ill. Ct. Cl. 368, the Court has been made aware that unemployment benefits are paid out of a revolving fund and not the State's general revenue fund, the funds from which back salary awards are payable. Therefore the transaction would not cancel itself out and the revolving fund should be reimbursed. In the interests of practicality, however, we direct the clerk's office to cause to be issued two separate warrants, one to Claimant and one to the director of the Department of Labor.

It is hereby ordered that Claimant be awarded the sum of $42,430.00 plus appropriate additions for employer contributions to employee retirement and/or FICA as well as appropriate deductions and withholdings for employee contributions to employee retirement and/or FICA as well as Federal and State taxes, all as set forth more fully in the Appendix attached hereto and made a part hereof. It is further ordered that the sum of $2,470.00 be paid to the director of the Department of Labor. These payments are not to be withheld pending the oral argument on the issue of insurance benefits if they can otherwise be made prior to a decision on that issue.

## APPENDIX A

Identification of State Contributions and Deductions from Back Salary Award

To the State Employees' Retirement System:

| | |
|---|---|
| Employee's contribution to State Employees' Retirement System | 6060.14 |
| Employee's contribution to FICA | .00 |
| State's contribution to State Employees' Retirement System | 5013.63 |
| State's contribution to FICA | .00 |

To Illinois State Treasurer to be remitted to Internal Revenue Service:

| | |
|---|---|
| Claimant's Federal Income Tax | 8486.00 |

To Illinois Department:

| | |
|---|---|
| Claimant's Illinois Income Tax | 1060.75 |

To the Claimant:

| | |
|---|---|
| Net salary | 26823.11 |

## OPINION ON REHEARING

Roe, C.J.

Claimant brought this claim seeking compensation for losses incurred by reason of a wrongful discharge from his employment with Respondent. On June 15, 1981, we rendered an opinion granting Claimant a gross award of $45,000.00 and reserved judgment on the issue of medical and hospitalization insurance as a proper

item of damages pending oral argument. Claimant moved for reconsideration of our determination with respect to the issue of mitigation, and oral argument was subsequently held on both issues.

We deal first with the mitigation issue. Claimant does not contend that we misstated the law on the issue but disputes our application of the law to the facts on record. Upon careful reexamination of the record we agree with Claimant and find that he did in fact meet his duties with respect to mitigation. It has previously been stipulated that Claimant would have received a gross salary of $78,355.40 had he been continuously employed by Respondent during the period he was wrongfully laid off. After accounting for our earlier award in the gross amount of $45,000.00, Claimant is due the gross balance of $33,355.40 plus $100.00 inadvertently unaccounted for due to a mathematical error in the last paragraph of the opinion. (Claimant's previous net award was actually based on only the gross amount of $44,900.00).

The second issue was whether or not Claimant is entitled to be reimbursed for health insurance benefits which would have been paid by the Respondent during the period of the wrongful layoff. In an effort to mitigate his losses Claimant purchased other health insurance which he said cost him $3,929.22 more than what he had been paying while employed by the Respondent. Additionally, Claimant seeks $4,321.80 as compensation for out-of-pocket medical expenses incurred which he stated would not have been incurred had his insurance paid for by the Respondent been in effect. Claimant argues that payment of such costs is necessary in order that he be made "whole" for what he lost by reason of the Respondent's actions and cites several cases as authority for his position.

It is the Respondent's position that the statute providing the remedy for Claimant, section 11b of the Personnel Code (Ill. Rev. Stat., ch. 127, par. 63b111b), provides only for back wages to be paid to Claimant. Said statute provides that Claimant should receive "full compensation" but does not expressly include insurance benefits. Respondent cited *Shimeall v. State* (1979), 32 Ill. Ct. Cl. 760, 763, wherein we stated as follows:

"While the guideline furnished by the Circuit Court of Sangamon County, Illinois, to this Court sets forth that Claimant is entitled to full back salary and benefits, to date, this Court has never included in back salary and benefit awards, any sum for the State's contribution to the employees' group hospital and life insurance coverage. This part of the claim is denied."

Because Claimant is not entitled to be compensated for the insurance, it follows, Respondent argues, that he is not entitled to recover for out-of-pocket medical expenses either.

After much consideration we are of the opinion that deprivation of health insurance occasioned by a wrongful layoff can give rise to compensable damages in this Court. Health insurance is a significant benefit given to employees of the Respondent by reason of their employment and where an employee has been wrongfully laid off he has been wrongfully deprived of that benefit. It is clearly a foreseeable naturally occurring loss caused by the wrongful actions of the employer. Regardless of whether the coverage can be modified or even discontinued unilaterally at any time by the employer, if it was in effect during the period of wrongful layoff and the employee shows that, but for the wrongful layoff, he would have been entitled to the benefit, he may have suffered a loss. *Shimeall, supra,* gives no rationale for its disallowance other than that to date insurance had never been factored into back pay awards. Insofar as *Shimeall* purports to disallow this loss

as a potential compensable item of damage it is overruled.

However, just as the Claimant has an obligation to make reasonable efforts to mitigate the loss of the salary element of damage in this type of cause of action, we hold that he has a similar obligation to mitigate his losses with respect to loss of health insurance benefits also. In arriving at the amount of damages, we will be concerned not only with what the Claimant shows were the additional costs borne by him because he was deprived of health insurance coverage during the period of his being laid off, but also the extent of his efforts to mitigate these costs. If, as in the case at bar, mitigation is in the form of purchasing a substitute health care insurance policy, necessarily inquiry will have to be made as to the comparability of the coverage of the substitute policy to the coverage provided by the Respondent in effect during the layoff period, and in certain cases the comparability of cost of the substitute policy with costs of policies providing similar coverage which were available to the Claimant in the market. Because of the nature of this element of damage, decisions will be made on a case-by-case basis according to a standard of reasonableness in view of the circumstances, as are determinations with respect to the loss of the salary aspect of the claim. Additionally, we wish to make clear that it is not our intent to foster lengthy and complex litigation over this issue and we view it as one which can be significantly narrowed by stipulation and often settled in the entirety.

Turning to the record in this case, we find that while the Claimant clearly preserved the issue, the evidence offered is lacking in many respects. Although the transcript contains several pages of Claimant's own

testimony on direct and cross-examination, the testimony elicited was vague and ambiguous. Although there was some discussion of policies and premiums, neither side introduced a policy into the record. Claimant offered nothing in the way of a receipt for a claimed cost nor was there any itemization of any expenses incurred for coverage or noncovered items. Claimant's counsel stated at the hearing that he believed the relevant material was in discovery and, in response to the commissioner's inquiry as to whether or not it was filed with the Court, stated that if any of the discovery was filed, it was filed. It was not filed.

In view of this being the first case to recognize that deprivation of health insurance benefits can give rise to compensable damages we feel that the Claimant should be afforded another opportunity to pursue this portion of his claim. Therefore we hereby allow him 30 days from the date of this opinion within which to request a new hearing on this issue only.

Claimant is hereby awarded the gross sum of $33,455.50 plus appropriate additions for employer contributions to employee retirement and/or FICA, and less appropriate deductions and withholdings for employee contributions to employee retirement and/or FICA as well as Federal and State taxes, all as set forth more fully in the Appendix attached hereto and hereby made a part hereof. This award is not to be withheld pending disposition of the insurance issue if it can be paid prior to our disposition of that issue.

## APPENDIX A

Identification of State Contributions and Deductions from Back Salary Award.

To the State Employees' Retirement System:

| | |
|---|---|
| Employee's contribution to State Employees' Retirement System | 208.29 |
| Employee's contribution to FICA | .00 |
| State's contribution to State Employees' Retirement System | 190.07 |
| State's contribution to FICA | .00 |

To Illinois State Treasurer to be remitted to Internal Revenue Service:

| | |
|---|---|
| Claimant's Federal Income Tax | 6691.10 |

To Illinois Department:

| | |
|---|---|
| Claimant's Illinois Income Tax | 836.39 |

To the Claimant:

| | |
|---|---|
| Net salary | 25719.72 |

Total award          $33,645.57

## ORDER

HOLDERMAN, J.

This cause coming before the Court on the joint stipulation of the Claimant and the Respondent, and the Court being fully advised finds:

Pursuant to a previous opinion of this Court in this matter, the parties have agreed to an amount due to the Claimant.

The Claimant is due from the State the sum of $7,132.28 because of a wrongful discharge.

It is hereby ordered that the sum of $7,132.28 be paid Claimant as reimbursement for expenses incurred in connection with health insurance during the time of the Claimant's wrongful discharge. It is further ordered that this award be paid in full, final and complete

satisfaction of all claims arising from the Claimant's wrongful discharge.