(No. 82-CC-1822–)

JAMES F. NEYLON, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed June 10, 1985.*

*Opinion filed December 19, 1986.*

EDWARD J. EGAN, LTD. (EDWARD J. EGAN, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (FRANCIS M. DONOVAN and MARY MULHERN, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

Montana, C.J.

This is a claim for back wages and benefits filed by a former employee of the Respondent. The relevant facts are as follows:

The Claimant, James Neylon, became a certified employee of the Illinois Racing Board in 1962 as an Administrative Assistant II. At that time the Illinois Racing Board administered the Illinois Bred Thoroughbred Program. The Claimant began to perform duties relating to the Illinois Bred Thoroughbred Program in 1963. In 1964, the Claimant's position of Administrative Assistant II was abolished and reclassified to Executive I and Claimant was thereafter appointed to the classified position of Executive I.

In 1973 the Claimant was assigned to the certified position of Executive II. His position was described on an Illinois Racing Board organizational chart as "Illinois Bred Supervisor." He continued in this position until January 14, 1975, when he was suspended by William L. Masterson, the Secretary of the Racing Board. After a hearing, the Civil Service Commission ordered the Claimant's discharge.

The Claimant appealed his discharge pursuant to the provisions of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*), to the circuit court of Cook County. On August 11, 1976, the circuit

court of Cook County in case No. 75 L 21490 reversed the order of the Civil Service Commission discharging the Claimant and ordered him reinstated to his position of Executive II.

The Claimant thereafter received a memorandum from William Masterson informing him that he could not be reinstated to the position he held before his discharge because that position had been eliminated by the Department of Personnel and the duties he had performed previously had been transferred to the Department of Agriculture. The memorandum also stated that the Claimant could not return to his position because the General Assembly had not appropriated money for the position which had been eliminated.

The Illinois Racing Board then filed motions in the circuit court of Cook County seeking a rehearing and to vacate the order of August 11, 1976, in case No. 75 L 21490 which ordered the Claimant's reinstatement. While the motions were pending the Claimant filed a *mandamus* suit in case No. 76 L 16386 seeking an order compelling various defendants to reinstate him in the position he held before his discharge. The Claimant also apparently filed a chancery action in the circuit court of Cook County in case No. 75 CH 3430 alleging that he was entitled to relocate with the Department of Agriculture under the provisions of the Department of Personnel Code.

On October 7, 1976, the Racing Board, the chairman of the Civil Service Commission, the director of the Department of Agriculture and the director of the Department of Personnel filed a motion to dismiss the *mandamus* suit.

On April 21, 1977, Judge Raymond K. Berg ruled on both the motions for rehearing and to vacate and the motion to dismiss the *mandamus* suit. The motion to dismiss the *mandamus* suit was granted and the motions for rehearing and to vacate were granted in part and denied in part. The motions for rehearing and to vacate were denied to the extent that they sought reconsideration of the Court's ruling of August 11, 1976, which reversed the Civil Service Commissioner's decision to discharge the Claimant. The motions were granted to the extent that they sought to deny reinstatement of the Claimant to the Illinois Racing Board subsequent to July 16, 1976, because the Court found that the primary employment duties and responsibilities of the Claimant under the Illinois Thoroughbred Program were either no longer entrusted to or among the present duties and responsibilities of the Illinois Racing Board as of July 16, 1976.

The Illinois Racing Board appealed the decision of the circuit court in case No. 75 L 21490 which reversed the Claimant's discharge and on November 19, 1978, the appellate court in *Neylon v. Illinois Racing Board*, 66 Ill. App. 3d 621, 384 N.E.2d 433, dismissed the appeal because the Illinois Racing Board and the Civil Service Commission, as appellants, failed to preserve and file the complete record. The Supreme Court of Illinois later denied the Racing Board's petition for leave to appeal.

The record does not clearly reveal the outcome of the chancery action filed by the Claimant in case No. 75 CH 3430. The Claimant's reply brief states that the chancery action was consolidated with the *mandamus* action in case No. 76 L 16386, and the administrative review action, case No. 75 L 21490, on the motion of the Attorney General. The reply brief further states that no

action was taken on the chancery case because the Attorney General continued his motion to vacate in the administrative review action and then appealed the order rendered in that action. Claimant's complaint, however, indicates that the circuit court allowed the Attorney General's motion to dismiss case No. 75 CH 3430 on the grounds that the circuit court lacked jurisdiction.

Sometime later another action, Illinois Racing Board v. Civil Service Comm'n No. 81 L 22214, was filed in the circuit court of Cook County. The exact nature of this case is not revealed in the record, however due to actions taken in the case by Judge James C. Murray this controversy is now before this Court.

An order dated January 20, 1982, and stamped by Judge Murray states as follows:

"The Attorney General has represented in open Court that the State of Illinois and all of its agencies agree that all issues in controversy between the defendant James Neylon and the State of Illinois and all of its agencies may be resolved in the Court of Claims.

The attorney for the defendant James Neylon, has represented in open Court that he intends to file a complaint in the Court of Claims seeking an adjudication of all issues in controversy between the defendant and the State of Illinois and all of its agencies.

WHEREFORE, this Court shall retain jurisdiction of this cause until all matters in controversy between the defendant James Neylon and the State of Illinois and all of its agencies have been resolved in the Court of Claims. This cause is therefore, continued generally until further order of court."

In his complaint Claimant seeks damages consisting of lost wages, pension contributions, medical insurance payments, accrued vacation time, sick leave and "any other rights and emoluments due him as an employee of the State of Illinois." The Claimant computed these damages to amount to between $163,789.00 and $189,784.00. By later amendment to the complaint, Claimant alleged that he suffered a nonwork-related

stroke in May of 1981 and under the provisions of sections 14—124 and 14—125 of the Pension Code (Ill. Rev. Stat., ch. 108½, pars. 14—124 and 14—125), he is entitled to a disability pension equal to one-half of the final average compensation he would have been entitled to in May 1981 had he not been wrongfully discharged. Jurisdiction was said to lie in the Court of Claims pursuant to section 8(a) of the Illinois Court of Claims Act. Ill. Rev. Stat., ch. 37, par. 439.8(a).

The claim is for the back wages and benefits allegedly due the Claimant as a result of his being wrongfully discharged and as a result of the Respondent's refusal to reinstate him. Previously the parties stipulated that the Claimant would have earned $29,089.00 during the period of the wrongful discharge, January 14, 1975, to July 16, 1976. On June 10, 1985, an interim order was entered awarding the Claimant a gross amount of $24,642.00. This figure was arrived at after taking into account amounts earned by the Claimant in mitigation of his losses. The award was vouchered on October 4, 1985. That order resolved that portion of the claim relating to the wrongful discharge.

At the outset of the Claimant's presentation at the oral argument, the threshold issue with regard to reinstatement was said to be whether or not a substantial portion of the Claimant's duties with the Racing Board were transferred to the Department of Agriculture. (Oral Argument tr. 3) This issue is derived from section 2—445 of the rules of the Department of Personnel (now Central Management Services) which provides as follows:

"*Transfer of Duties*: When the duties of a position are relocated by transfer or by abolition and reestablishment and when said duties are substantially the same, an incumbent employee may elect to relocate and retain the duties of that position."

Effective January 1, 1976, section 37—30(e) of the Illinois Horse Racing Act of 1975 (Ill. Rev. Stat., ch. 8, par. 37—30(e)), was amended to provide, in part, as follows:

"The Illinois Thoroughbred Breeder's Fund shall be administered by the Department of Agriculture with the advice and assistance of the Advisory Board created in subsection (f) of this section."

We agree that this is the remaining issue with respect to the merits of this claim. However, at this point, for the record and for the future we want to make the following comments concerning the procedural history of this matter and the jurisdiction of the Court of Claims to determine the reinstatement issue. The Personnel Code (Ill. Rev. Stat., ch. 127, par. 63b101 *et seq.*), which authorizes the Department of Central Management Services to promulgate personnel rules such as the rule quoted above and relied on herein by the Claimant also authorizes said Department to provide by rule for a grievance resolution procedure. At the time of the Claimant's wrongful discharge, at all relevant points in time, and now, there was and is in effect a procedure established by rule for resolving grievances arising out of said rules. Additionally, the Personnel Code authorizes the Civil Service Commission to hear and determine grievances of this nature. The procedures culminate in administrative review and appeals to higher courts thereafter. The fact that the Claimant has already pursued this avenue of relief in connection with his wrongful discharge does not mean he may bypass it over the issue of the refusal to transfer him along with his duties to the Department of Agriculture. This issue involves a wholly new cause of action which should have been heard through the administrative channels. Resolution of issues of this nature is the purpose for which that avenue of relief was created. It is only after

final resolution there that the Claimant should have come to this Court and then only if he was found entitled to back pay, the appropriation for which has lapsed. For example, the portion of this claim relating to the wrongful discharge, which apparently was decided with finality, was properly before the Court of Claims.

Section 8(a) of the Court of Claims Act does not mandate that this Court hear and determine the reinstatement issue either. Section 25 of the Court of Claims Act and rule 6 of the Rules of the Court of Claims provide that the Claimant must exhaust all of its remedies, legal and administrative, before pursuing its claim to final resolution in the Court of Claims. At this point, Claimant's claim in the Court of Claims for damages incurred beyond July 16, 1976, is premature. In the future we do not intend to condone a situation creating potential forum-shopping by employees subject to the Personnel Code and Rules who have a grievance and open this Court to all of those grievances now handled administratively within the framework of the Personnel Rules and the Civil Service Commission.

Nor does the order stamped with Judge Murray's name dated January 20, 1982, (quoted above) mandate that the Court of Claims decide this issue. That order merely incorporates or restates the essence of an agreement between the parties that the controversy be resolved in the Court of Claims, continues the action in the circuit court of Cook County, and notes that that court retained jurisdiction. The order did not mandate that the Court of Claims decide the issues. The jurisdiction of this Court is set by statute. No agreement by the parties should be able to confer jurisdiction on this Court. Jurisdictional issues may be raised at any time by any party or the Court itself.

At the present time, there is no order by any administrative or judicial authority providing that Mr. Neylon should be employed by the State of Illinois. Judge Berg's order of April 21, 1977, denying reinstatement to the Claimant subsequent to July 16, 1976, remains in effect.

However, because we think this matter has gone on long enough, in the interest of judicial economy, and in fairness, we will render a decision on the merits of the reinstatement portion of this claim.

Having reviewed the evidence we find in favor of the Claimant on the issue of reinstatement, that is, that a substantial portion of his duties were relocated, either by transfer or by abolition and reestablishment, and that he should have been allowed to reassume those duties at the different agency.

As for damages, the Claimant is entitled to such compensation as would place him in the same position as if he had been reinstated effective July 16, 1976. The first item of damages is the wages. The interim order previously entered compensated him for lost wages prior to July 16, 1976. On May 5, 1981, the Claimant suffered a disabling stroke. Therefore, he is due what he would have earned from July 16, 1976, to May 5, 1981, less what he earned in mitigation. In computing those losses the Claimant figured in a 7.5% annual increase based on the average annual increase he received from 1969 to 1974. At the time of his discharge it was stipulated that he was earning $17,606.50 annually. Claimant computed the total amount he would have earned to be $105,732.00. The Respondent argues that such a method of calculating the lost wages is speculative and for that reason should not be accepted

by the Court. Respondent would have the Claimant identify a specific position in which he should have been reinstated and use the set rate of compensation for that position. The Claimant did not identify such a position during the litigation. Having found that Claimant should have been reinstated, that he suffered loss of wages is not speculation but fact. In *Harmon v. State* (1978), 32 Ill. Ct. Cl. 543, 545, we quoted Hunter, *Trial Handbook for Illinois Lawyers*, 4th edition, chapter LXXX, General Rules Relating to Damages, sec. 80:5, page 815:

"Damages are not rendered uncertain because they are uncertain in amount, as distinguished from those which are too uncertain to be recoverable because they are not the certain results of the wrong that has been committed."

As the triers of fact it is our responsibility to affix the amount of damages. We do not think that Claimant's method of calculation is unreasonable (although we do question some of the arithmetic) and Respondent did not offer a workable alternative. We find that Claimant suffered $100,000.00 in lost wages. The evidence indicates Claimant earned $28,885.00 in mitigation of his losses. We previously deducted $4,447.00 earned in mitigation for the period covered by the award made in the interim order. We are satisfied that Claimant met his responsibilities with respect to mitigation of his losses during this period. Therefore, we now deduct the balance of the amount earned in mitigation, $15,410.00, which leaves $84,590.00 due Claimant for lost wages.

Claimant seeks compensation for hospitalization and life insurance which would have been paid by the Respondent had he remained an employee. In *Nolte-meier v. State* (1983), 38 Ill. Ct. Cl. 107, we held that loss of insurance benefits could be a compensable item of damages in cases such as the one at bar. The record indicates that he paid $118.00 for hospitalization

insurance for 33 months totaling $3,894.00. For 51 months until January 1, 1982, he paid $27.53 per month for a total of $1,404.00. After his suspension, he purchased $15,000.00 in life insurance (which is approximately the amount of coverage his employment with the Respondent would have provided him toward the end of the period). The record indicates he paid $57.54 in quarterly premiums for a total of $2,128.86 as of November 1, 1982.

Claimant also seeks compensation for loss of disability payments. On May 5, 1981, Claimant suffered an apparently disabling stroke and testified he was unable to work any more. His argument is that had he been reinstated he would have been entitled to disability payments as a benefit of being a State employee. It is unclear as to whether Claimant would have us award these payments (and consequently pay them as other awards are paid) or order the State Employees' Retirement System to pay them. The funds with which such nonoccupational disability benefits are paid are held in a trust and are segregated from other State funds and administrative decisions of the Board of Trustees of the Retirement System are subject to administrative review, not review in the Court of Claims.

Claimant's representations concerning enforcement of any decision we render notwithstanding, having found Claimant should have been reinstated, we think that he now should exhaust his potential remedy for this claimed item of damages by applying for back benefits from the Retirement System. We will retain jurisdiction and reconsider this aspect of his claim if his application to the Retirement System is unsuccessful and he can show that, but for the Respondent's failure to reinstate him, he would otherwise have been eligible for the benefits.

One of the conditions for eligibility to receive disability benefits is that an employee must use all sick time accumulated as of the date of the disability. The evidence is that Claimant would have been entitled to use his sick days following his stroke had he been employed at the time. A State Employees' Retirement System disability medical report form containing a doctor's opinion that the Claimant was permanently disabled was entered into evidence by stipulation. It was uncontroverted that he would have accumulated 220 sick days as of November 1982. These days would have been paid at his rate of salary as of May 5, 1981, the date of the stroke. That rate cannot be stated with exact certainty but, as previously indicated, he would have been earning something and difficulty of proof does not render the damages speculative. We, as triers of fact, find this amount to be $2,100.00 per month. Eleven months at $2,100.00 comes to $23,100.00.

In summary, the various items of damages are as follows:

Back wages (less mitigation) ......$ 84,590.00
Hospitalization Insurance......... 5,298.00
Life Insurance................... 2,128.86
Sick Days....................... 23,100.00

Total...........................$115,116.86

It is hereby ordered that Claimant be and hereby is awarded the gross sum of $115,116.86 subject to appropriate employer contributions and employee deductions as more fully set forth in the Appendix compiled by the Clerk's Office which is attached hereto and incorporated herein.

## APPENDIX A

Identification of the State Contributions and Deductions from Back Salary Award.

To the State Employees' Retirement System

| | |
|---|---:|
| Employee's contribution to State Employees' Retirement System | 2327.12 |
| Employee's contribution to FICA | .00 |
| State's contribution to State Employees' Retirement System | 1948.96 |
| State's contribution to FICA | .00 |

To Illinois State Treasurer to be remitted to Internal Revenue Service:

| | |
|---|---:|
| Claimant's Federal income tax | 4928.40 |

To Illinois Department:

| | |
|---|---:|
| Claimant's Illinois income tax | 616.05 |

To Office of Employment Security:

| | |
|---|---:|
| Director Dept. of Employment Security | 9000.00 |

To the Claimant:

| | |
|---|---:|
| Net Salary | 7770.43 |

Total Award $26,590.96