(No. 92-CC-1579-)

SAMUEL A. BARNES, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 25, 1995.*

*Order on petition for rehearing filed November 16, 1995.*

CARL M. WALSH and LONNY BEN OGUS, for Claimant.

JIM RYAN, Attorney General (CARA L. SMITH and COLLEEN MCMCLOSKEY VON OHLEN, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

Claimant, Samuel A. Barnes, brought this cause of action against the Respondent, State of Illinois, seeking mandamus and alleging breach of contract. Claimant alleged that on May 14, 1990, his employment was terminated by the Illinois Department of Mental Health and Developmental Disabilities (hereinafter "Department"), and that his termination was in violation of the Illinois Administrative Code and the appropriate employee handbook.

A hearing was conducted on this matter before Commissioner Hanley.

### The Facts

The department made a decision to terminate the Claimant, Samuel Barnes. An employee's handbook entitled *The Policies and Regulations Affecting Personnel of the Department of Mental Health and Development Disabilities Employee Handbook* (hereinafter the "handbook") was given to Mr. Barnes at the time he was hired. Mr. Barnes certified that he received a copy of the handbook on April 1, 1987, and that he understood that compliance with these policies and regulations was a condition of employment and he further understood that violations of any department policy or regulation could result in disciplinary action up to and including the loss of his job. The introduction page of the handbook stated that Mr. Barnes was expected to know these policies and

abide by them, that certain types of behavior could lead to discharge, and that the handbook was in effect in May of 1990 and applied to Samuel Barnes.

Mr. Barnes violated provisions in the handbook which led to him being terminated on or about May 14, 1990. He violated the policy at page 14 which states that the employee may be discharged if the employee uses or possesses narcotics or alcohol or other habituating drugs while on duty or while off duty in such manner as to bring adverse criticism on the department.

Several people in addition to Mr. David Himpelmann, the labor relations administrator, contributed to the decision to fire Mr. Barnes, including the acting director of the department, William Murphy; chief of the employee and labor relations section in the central office, Phil Moore; Della Klevs, the facility director; Dale Awick, physical and support director at the Kiley Center; and Carl Baker, Claimant's immediate supervisor. These named persons had a copy of a newspaper article which indicated Claimant had been arrested for possession of, and dealing, cocaine. The department's internal security investigator provided them with a case number or an arrest warrant number and a copy of the warrant. There was no evidence of Mr. Barnes possessing or using alcohol or narcotics or other habituating drugs while on duty. They knew that he was not on duty when he was arrested and the newspaper article did not mention where Mr. Barnes worked.

Mr. Barnes was not referred by Mr. Himpelmann or anyone else in the department to the employee's assistance program coordinator for treatment. Paragraph 2 under "Procedure" (referring to the handbook) specifies that an employee who demonstrates a problem with alcohol, narcotics or other habituating drugs shall be referred

to the substance program coordinator. A letter was sent to Mr. Barnes asking him to appear for a predisciplinary meeting on May the 9th, which was held on May 11th at Claimant's request. At the meeting, no reason for Mr. Barnes' termination was stated except for his arrest.

David Himpelmann was the labor relations administrator of the Ann M. Kiley Center and had been for roughly 13 years. Mr. Himpelmann identified the form entitled *Recommendation for Suspension/Discharge of an Employee*, which he completed, recommending discipline. He corrected paragraph 2 by noting that suspension pending judicial verdict does not apply to an exempt employee. There was no mention of adverse criticism of the department.

Mr. Carl Baker, plant maintenance engineer, had served in that position for 10 years and was Mr. Barnes' supervisor on May 1, 1990. Mr. Baker identified and acknowledged that he had signed the recommendation for discharge form where it says, "Home Manager/Immediate Supervisor." He was at the May 11, 1990, meeting with Carl Walsh, Claimant's attorney. The meeting was conducted by David Himpelmann.

Mr. Baker identified a memo to him from Mr. Summerford giving him the status of Mr. Barnes on May 4, 1990. The memo does not contain anything about adverse criticism to the department concerning Mr. Barnes' arrest.

Upon cross-examination, Mr. Baker testified that Mr. Summerford was in the habit of sending him memorandums concerning his employees in the department. The memo states that a copy of the warrant is attached and that he actually saw the warrant. Mr. Summerford called Lake County Court and found out the status of his employee and passed it on.

Claimant testified that he started working for the State of Illinois in the department in Waukegan from May of 1979 until he was terminated on May 14, 1990.

Mr. Barnes identified his signature on the certification page for receiving the handbook. He was given the handbook at the time he was asked to sign the certification page and he read through the handbook when he received it. The handbook gave him conditions of his employment. It said things he was expected to do and not to do and told him when he might be fired. It had a list of various things which were against policy that allowed for disciplinary action leading to dismissal. The handbook goes through a whole list of various conduct which could lead to discharge. He did not start looking for any other jobs because he could meet those guidelines and do a good job. The handbook meant that he had an agreement with the State for employment.

Mr. Barnes testified that in May, 1990, he was making approximately $20.25 per hour. He now makes $22.60 per hour as a union carpenter. After May 11, 1990, he was ready, willing and able to go back to work.

Carl Baker testified for the Respondent that he had been employed by the Department of Mental Health for 30 and a half years. His current title is plant maintenance engineer 2 and he started at the Kiley Center, a 55-building, 430-bed retardation center in Waukegan, in 1974. The facility serves mentally retarded patients and some dual-diagnosis mentally retarded and mentally ill patients. There are 48 residential homes, each consisting of four bedrooms, living room, dining room, kitchen, two bathrooms and a nurse's station. Medical nurses are in these facilities and medication is kept in each home and in the pharmacy and administration building.

Mr. Baker supervises carpenters and they are allowed to go in residential homes to perform their duties. He knew Claimant when Claimant first started working there in 1979 and when Claimant came back in 1987. From 1987 until Claimant's discharge in 1990, he was Claimant's direct immediate supervisor. He was aware of Claimant's job performance and observed him daily. In his opinion, Claimant did not stay within the guidelines of the employee handbook. Mr. Barnes was referred to the employee assistance program coordinator for counseling for alcoholism two or three months before May.

Mr. Baker identified a three-page Respondent's group exhibit number 1. The first page was a memorandum dated October 13, 1989, from Mr. Baker to Sam Barnes. It was Mr. Baker's practice to keep this memorandum in the regular course of business. He had a problem with Claimant's absenteeism and put him on the proof of status for three months from the date of the memorandum. He continued the proof of status for another three months.

The third page of Respondent's group exhibit number 1 is a written reprimand for misuse of time. The memorandum serves as documentation of the days when Claimant had an unauthorized absence or was tardy. Unauthorized absence is when someone is absent and has not been authorized and they do not have the time on the books to take off. "XA" is unreported absence or is when someone is off and they don't call in. The memo shows that Claimant had two unauthorized absences, two unreported absences, and 22 instances of tardiness.

Mr. Baker identified Respondent's exhibit number 2 as a May 5, 1990, written reprimand to Barnes for pushing a co-worker in a confrontation on April 28, 1989.

Mr. Baker identified Respondent's exhibit number 3 as an October 13, 1989, memo he had written to Claimant. Two other tradesmen had told him that Claimant had thrown a drill against the wall and it no longer worked. Claimant violated a rule against destruction of State property.

Mr. Baker identified Respondent's exhibit number 4 as a written reprimand for Mr. Barnes for leaving the grounds for 21 minutes without punching out on October 13, 1989.

Mr. Baker was aware that Claimant was discharged from the Department of Mental Health for possession and dealing of narcotics. He found out that Mr. Barnes was arrested for the possession and dealing of narcotics from Mr. Summerford.

Upon cross-examination, Mr. Baker testified that none of the prior disciplinary actions listed on Respondent's exhibit numbers 1, 2, 3 and 4 were listed as a cause for the discharge. He was at the meeting on May 4, 1990, and at that meeting none of those documents were shown to Claimant nor were they discussed.

Samuel Barnes, the Claimant, identified Respondent's exhibit number 5, a CMS-2 form, with his signature on the bottom. In box number 7 of the form, under the transaction on line 1, it says "exempt appointment." He understood an exempt appointment to be one in which he didn't have to take an exam to get the job.

Mr. Barnes testified that on May 1, 1990, he was arrested for the possession of a controlled substance and unlawful delivery of that substance. The substance was cocaine and he pled guilty to that offense. His sentence was four years and he served 18 months of that sentence. It was a felony conviction.

Mr. Barnes is familiar with the employee policy that you are not to abuse alcohol or any narcotics while on duty and you are not to bring any adverse criticism to the department. His arrest was publicized in one newspaper which did not mention where he worked.

The employee handbook governed the conditions of his employment and he understood that as long as he stayed within those conditions, he would remain employed. He did not go back to work the day after his arrest which was May 2, 1990. Claimant was not sure if his sister called in and said he was sick. He was in the Lake County jail until 10 o'clock in the morning and he was ill with emotional distress.

Mr. Barnes was familiar with the policy regarding damage to State property and the wall he threw the drill at was a wooden wall. Claimant testified that the drill did not get damaged so that it would not work any longer because he repaired the drill himself.

Mr. Barnes did not grieve the discharge with the department. He did not appeal his grievance to the Department of Central Management Services. Mr. Barnes testified that based on his knowledge of the handbook he believed that, because he was not a union carpenter, he did not have the opportunity to pursue a grievance.

Mr. Barnes did not talk to David Himpelmann or anybody to clarify exactly what his position as an exempt status was with the center because he felt he understood his rights and responsibilities as contained in the handbook.

Upon cross-examination, Mr. Barnes testified that he has seen only one newspaper report concerning his arrest. It did not mention anything about his working for the State of Illinois or any department thereof. He acknowledged receiving a letter dated May 4, 1990, notifying him

of a predisciplinary meeting. He believed he might be terminated. On May 11, 1990, he went to the meeting with his attorney, Mr. Walsh.

Mr. Barnes testified that at the predisciplinary meeting, no one said he did anything wrong. The facility director was Della Klevs. The letter dated May 4, 1990, from Della Klevs to him said she was giving him this opportunity to respond to the charges at the predisciplinary meeting.

Dave Himpelmann testified that he had been employed by the department a little over 17 years. A labor relations administrator, a position he has held for approximately 13 to 15 years, served as the liaison between management supervisory staff and employees and their representatives, primarily trying to resolve problems that occur based on conditions of employment.

Mr. Himpelmann testified that he is familiar with the different categories of employees at the facility and is basically familiar with the definition of an exempt employee. An exempt employee is one who serves at the will of the department. They serve in an exempt status which means that they can be terminated for almost any reason.

The event which led to the discharge of Barnes was his arrest on May 1, 1990. His act warranted discharge because the department believed, in general and through discussion with the central office and relations chief, it was the type of an arrest that can bring adverse criticism on the department and that it raises reasonable doubts about that person's ability of continued employment. The center is responsible, and has to answer, to parents of all of the recipients of service at the facility. It needs to comply with standards of accreditation by the accreditation counsel for the Department of Mental Disabilities, the

Department of Public Health, Department of Public Aid, and also the Health Care Finance Administration of the Federal government.

He identified Respondent's exhibit number 6 as a copy of the May 4, 1990, letter from Della Klevs to Samuel Barnes setting up the predisciplinary meeting. He signed Della Klevs' name with her authority and he later crossed out "suspension pending judicial verdict," and entered the notation, "Error: Note discussion does not apply to an exempt employee," then initialed it. Barnes did not have the option of a suspension pending judicial verdict. He gave Barnes the option of going on a general leave of absence until the matter of his arrest was resolved.

Claimant did not file a grievance.

Mr. Himpelmann identified a May 16, 1990, letter from Claimant's attorney indicating he received it. He did not do anything after receiving the letter.

Mr. Barnes was discharged because the department feared that adverse criticism would follow. The May 4, 1990, letter states that his arrest raises reasonable doubt concerning his suitability for continued State employment. The letter does not mention adverse criticism because of his arrest. The handbook requires that an employee is entitled to know the reason for any disciplinary action against him. Mr. Barnes never was sent a corrected version of the May 4, 1990, letter. On redirect examination, Mr. Himpelmann stated that he told Barnes on May 7, 1990, that the "suspension pending judicial verdict" did not apply to him as an exempt employee.

### The Law

Claimant argues that the employee handbook created an employment contract between Claimant and Respondent. (*Duldulao v. St. Mary of Nazareth* (1987), 115

Ill. 2d 482, 505 N.E.2d 314.) Mr. Barnes signed a certification of receipt for the handbook. The certification states that, "compliance with these policies and regulations is a condition of employment" and that "violations of any Department policy or regulations could result in disciplinary action up to and including loss of job."

Mr. Barnes argues he could only be discharged in compliance with the handbook. The handbook contains a section, under part IV, personal conduct, in relation to its policy towards employees possessing or using narcotics or other habituating drugs. The policy statement is as follows:

"Department employees who possess or use alcohol, narcotics or other habituating drugs while on duty, or those employees while off-duty who use alcohol, use or possess narcotics or other habituating drugs in such a manner as to bring adverse criticism on the Department, may be discharged."

It also contains "procedures" that shall be followed in relation to employees who demonstrate a problem with narcotics or other habituating drugs.

The parties agree that Mr. Barnes did not use or possess narcotics while on duty. Therefore, Claimant argues that Respondent discharged him because he violated the policy against the off-duty use or possession of narcotics or other habituating drugs in such a manner as to bring adverse criticism on the department. The only newspaper article about the arrest does not mention where Mr. Barnes is employed. The Respondent has not produced any evidence of adverse criticism of Barnes' off-duty use or possession of cocaine. Respondent's agents testified that they feared such criticism. The handbook does not specify that an employee could be discharged for the fear of adverse criticism.

Although the Respondent discharged Barnes because of his arrest, at that time he was presumed innocent. *Coffin v. United States* (1885), 156 U.S. 432, 39 L.

Ed. 481, 15 S. Ct. 394; *People v. Layhew* (1990), 139 Ill. 2d 476, 564 N.E.2d 1232.

The other instances of alleged misconduct by Claimant are not relevant to the discharge because they were never mentioned to Claimant prior to the trial in this cause. Claimant argues the Respondent is asking that the contract be rewritten to provide that a "fear" of adverse criticism is sufficient to discharge an employee after his arrest for use or possession of cocaine. In support of the proposition that this contract only allows discharge when there is actual criticism, Claimant cites *Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 568 N.E.2d 827.

There was no stated cause for the discharge of Claimant. The cause of discharge changed since the May 11, 1990, meeting from suitability of continued employment to fear of criticism.

Claimant was an exempt employee. Exempt employees serve at the will of Respondent, are not certified, and can be terminated for almost any reason. A certified employee is covered by jurisdiction B of the Personnel Code.

Mr. Himpelmann stated that Claimant Barnes' arrest for possession with intent to deliver cocaine warranted discharge because that type of arrest can bring adverse criticism upon the Respondent and raised doubts about his suitability for continued State employment.

Claimant was an employee at will. Exempt employees are defined in the handbook as, "any person appointed to a position not covered under Jurisdiction B of the State Personnel Code."

Respondent argues that Claimant was an employee at will. Respondent also argues that Claimant failed to exhaust his remedies under the handbook he alleges is a contract. Claimant failed to pursue the grievance procedures.

The grievance procedures referred to by Respondent indicate that an employee: should first attempt to resolve the concern with the immediate supervisor; then refer it to the facility director, or her designee; then a designee of the director of the department; and finally, an appeal to the director of Central Management Services, and, in certain cases, an impartial arbitrator. Mr. Himpelmann testified that Barnes did not file a grievance regarding the discharge. Section 25 of the Court of Claims Act requires an exhaustion of all available remedies prior to bringing an action in the Court of Claims. *Boe v. State* (1984), 37 Ill. Ct. Cl. 72.

Claimant has failed in his burden of establishing that he exhausted his remedies.

Further, Claimant has not presented evidence entitling him to damages. The only reference in the record to damages is Claimant's testimony that he was making $20.25 per hour in May, 1990. There is no evidence of how long he was unemployed or the circumstances affecting his unemployment, other than his own testimony that he was incarcerated for 18 months.

The Claimant does not reference any provision of the statutes or regulations, other than those included in the handbook, to support his contention that his discharge was improper. Therefore, the primary question is whether the handbook created terms of employment. If not, the parties would be subject to terms determined by law. Neither party cites any Court of Claims cases to support or refute the theory that the handbook created a contract between Claimant and Respondent. Claimant relies on *Duldulao* for the proposition that the handbook created a contract. Mr. Himpelmann did testify that the handbook applied to Claimant. The handbook was delivered to Claimant and he signed a certification.

Barnes does not dispute that he was an exempt employee not covered by the State Personnel Code.

The handbook does define "exempt employee" but does not indicate that exempt employees are not covered by the handbook. Respondent apparently argues that Claimant is exempt from the handbook that that is not expressed. We believe the handbook set terms of employment.

The Respondent had the right to discharge Claimant Barnes for a violation of its policy against use or possession of narcotics and other habituating drugs in two circumstances. Claimant could be discharged for:

(a) possession or use of narcotics or other habituating drugs *while on duty*; or

(b) while off-duty, he used or possessed narcotics or other habituating drugs, *in such a manner* as to bring adverse criticism on the Respondent.

The question is whether the Respondent had to wait for actual criticism to be brought forth, or could discharge Claimant based upon the belief that the possession or use was *"in such a manner"* as to potentially bring adverse criticism in the future. Although there is no evidence presented on the intent of the language in question, it is apparent from the plain and ordinary meaning of the words that the Respondent was trying to avoid the harm caused by adverse criticism. This is understandable given the nature of the department's function, namely, providing residences, medication and treatment for disabled individuals.

To adopt Claimant's construction, the Court would have to rule that Respondent could take no action prior to adverse criticism being leveled at the department. Taking this argument to the extreme would mean that the

Respondent could not discharge Claimant even after Claimant was convicted and sentenced, unless it was the recipient of adverse criticism. This construction does not allow for the avoidance of harm. The better construction is that the Respondent could make the decision to discharge if Claimant's use or possession of narcotics was "in such a manner" as to bring adverse criticism. A felony arrest would be such a manner. The Court accepts the judgment of Claimant's supervisors in deciding that Claimant's use or possession of cocaine, and his arrest for "intent to deliver," was *in such a manner* as to bring adverse criticism.

It is also Claimant's burden to demonstrate loss. (*Grant v. State of Illinois* (1993), Ill. Ct. Cl. 24.) Claimant has presented virtually no evidence concerning damages except his hourly rate at time of discharge, the fact he was incarcerated for 18 months, and that his current hourly rate at his new employment exceeds the rate at the time of discharge. We cannot make a finding of damages on this evidence.

We therefore find that Respondent properly terminated Claimant, an at-will employee, pursuant to the terms of the handbook. Claimant further failed to exhaust his administrative remedies and failed to present competent evidence of damages. Claimant, as an at-will employee, had little job protection. He seeks protection from the terms of the handbook. However, Claimant failed completely to take advantage of the grievance procedures within the handbook. Claimant cannot have it both ways. His failure to exhaust remedies standing alone is a sufficient ground upon which to deny this claim. *Neylon v. State* (1986), 39 Ill. Ct. Cl. 63.

For the foregoing reasons, it is the order of this Court that Claimant's claims be and hereby are denied.

## ORDER

Frederick, J.

This cause comes before the Court on Claimant's petition for rehearing, and the Court having reviewed the court file, all of the pleadings, the Court's opinion, and the Court being fully advised in the premises, wherefore, the Court finds:

1. That the Court's opinion of August 25, 1995, cites three separate grounds for denial of Claimant's claim.

2. That Claimant raises nothing before the Court which would lead the Court to change or modify its prior opinion.

3. That upon review, the Court believes that its prior opinion was the proper decision.

Therefore, it is ordered that the Claimant's petition for rehearing is denied.