(No. 38639.—

THE PEOPLE *ex rel.* Jack F. Bourne, Appellee, *vs.* LLOYD M. JOHNSON, Comissioner, Department of Streets and Sanitation, City of Chicago *et al.,* Appellants.

*Opinion filed March 18, 1965.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and ROBERT J. COLLINS, Assistants Corporation Counsel, of counsel,) for appellants.

MICHAEL F. RYAN and RICHARD F. McPARTLIN, both of Chicago, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This cause reaches us as an allowed petition for leave to appeal from a judgment of the First District Appellate Court (48 Ill. App. 2d 307) affirming the action of the Cook County circuit court awarding a writ of *mandamus* to compel Chicago city officials to pay relator's back salary accrued during a period subsequent to his wrongful discharge.

Relator was a civil service employee of the city of Chicago for about ten years, during which he incurred heavy indebtedness, apparently largely due to the serious illness and subsequent death of his wife. As a result of his failure to pay his debts he was suspended from his employment for five days on March 5, 1962, but was not returned to duty

until April 10, 1962. On May 22, 1962, he was again suspended for the same reason and subsequently discharged from his city employment. In a separate proceeding under the Administrative Review Act the circuit court determined his discharge to have been wrongful and directed his reinstatement.

It was stipulated that from March 5, 1962, to January 4, 1963, relator was employed by a liquor store at a gross salary of $105 per week; that the hours of this employment were from 5:00 P.M. to 2:00 A.M., and that these hours were not during the hours of relator's city employment. During the period from April 11, 1962, to May 22, 1962, (the date of relator's discharge) he performed his city duties and his services for the liquor store. There is no showing of the existence of any municipal ordinance or regulation prohibiting secondary or "moonlighting" employment of employees.

The defendant officials contend the courts erred in holding the monies earned in the liquor store employment should not be set off against the back salary. They further argue relator has not established a clear right to the writ of *mandamus*. Relator concedes that the right of setoff exists as to earnings by an employee during the period of wrongful discharge, but contends that this rule embraces only those earnings which would have been incompatible with the prior employment. The precise question for our consideration is, therefore, whether an employer who wrongfully discharges an employee is entitled to credit on a back-pay award for subsequent earnings of the employee from a secondary job, compatible with, and held by the employee in conjunction with, the principal employment.

We have previously and specifically held the employer entitled to set off the employee's earnings from other employment against the salary accruing during the period he was improperly prevented from performing his duties. (*Kelly* v. *Chicago Park District*, 409 Ill. 91; *People ex rel.*

*Krich* v. *Hurley,* 19 Ill.2d 548.) Defendants maintain denial of setoff in the case at bar would be contrary to these decisions, but it is apparent that neither *Kelly* nor *Krich* involved the issue here presented since the credit here sought is for earnings from a continuation of supplemental employment engaged in by relator at the same time he was performing the duties of the job from which he was wrongfully separated, whereas the cited cases dealt only with the question as to whether *any* earnings during the wrongful separation period could be deducted.

Defendants, in their argument, refer us to a number of other authorities including *Corfman* v. *McDevitt,* 111 Colo. 437, 142 P.2d 383, and the annotation following it in 150 A.L.R. 100; *Ransom* v. *City of Boston,* 192 Mass. 299, 78 N.E. 481, and *Spurck* v. *Civil Service Board,* 231 Minn. 183, 42 N.W.2d 720. *Corfman* and the A.L.R. annotation are principally concerned with the distinctions in the rule applied to "public officers" as distinguished from "public employees", and are not relevant to the case at bar except as they state the general rule which relator concedes, *i.e.*: that "public officers" are not subject to setoff or mitigation while "public employees" are. *Ransom* is to the same effect, whereas *Spurck* is actually authority for relator's position, since the court there, in determining the setoff the municipal employer was entitled to as against the reinstated employee, said: "* * * we feel that a fair rule under the facts and circumstances of this case is that, although relator was required only to seek other like employment, his damages should be reduced by amounts earned at any *inconsistent* employment during the time he was wrongfully discharged. [Citations]." (Emphasis ours.) In holding deductible earnings from out-of-state employment during the period of wrongful discharge, that court further held: "Clearly, relator's employment while out of the state was inconsistent with his employment in the division, since he could not have done this work at the same time that he was perform-

ing his duties with the division. For these reasons, we feel that the sums so earned should be deducted." The clear implication is that had the employee been engaged in work consistent with the wrongfully terminated duties, there would have been no deduction.

The same inference is to be drawn from *Atholwood Development Co.* v. *Houston,* 179 Md. 441, 19 A.2d 706, where the Court of Appeals, while recognizing the general rule that the employee's damages are to be mitigated by the amounts he earned or might have earned by the exercise of reasonable diligence during the period of unwarranted discharge, stated: "An exception to the rule as to mitigation of damages is made in the case of a salesman or part-time servant when the money earned by him after discharge could likewise have been earned by him without a violation of his duty under the contract if he had not been discharged. [Citing cases]." The Second Circuit Court of Appeals in *Sanders* v. *Schenley Products Co.* 108 F.2d 23, in a damage suit by an architect, who was employed by defendant under a contract permitting other employment to the extent consistent with the plaintiff's duty to his employer, held the employer not entitled to set off the outside earnings during the period covered by the employer's breach of contract, saying: "On wrongful discharge from an employment of this character the damage to the employee is measured by the agreed wage during the remainder of the term, reduced by such part of his earnings during the same period as he could not have earned if he had continued in the same employment. [Citing cases.]" (See, also, 56 C.J.S., Master and Servant, sec. 59, pages 472 and 474.) Support for this reasoning is also to be found in the early decision of this court (*Williams* v. *Chicago Coal Co.* 60 Ill. 149,) where the court indicated all earnings from other employment during the period of a wrongful discharge were not necessarily deductible in mitigation, and that whether the labor "was

not * * * more severe in the performance" was to be considered in determining deductibility.

The theory underlying a suit for back salary is to make the employee whole—to compensate him to the extent that the wrongful deprivation of salary has resulted in financial loss. For that reason the amount recoverable is to be reduced by his other earnings during the period of separation insofar as such income would have been incompatible with performance of his duties to his erring employer. But this does not necessitate mitigation of the recoverable salary by earnings compatible with and being received during the employment from which the employee is wrongfully discharged. There is in this record no hint of incompatibility between relator's liquor store employment and his obligation to the municipality, either in the form of regulatory proscriptions or conflicting hours or duties. In fact, relator held both jobs for a substantial period of time prior to his wrongful discharge. As was aptly observed by the Appellate Court, the industrious holder of two compatible jobs who is wrongfully discharged from one should not be penalized by permitting the wrongdoer to deduct from the damages for which he is liable the earnings of the second job during the period of wrongful discharge.

Embraced in defendants' argument is the contention that relator must establish his use of reasonable diligence to secure substitute employment before he may recover damages in the form of back salary, but we believe defendants misplace the burden. The defendants were here the wrongdoers, and the obligation to produce whatever proof existed in diminution of damages rested on them. The overwhelming weight of authority, in this State and elsewhere in this country, is that an employer in an action for lost wages, must affirmatively show in order to reduce damages that the discharged employee could or did have other earnings subsequent to the wrongful discharge. (See cases col-

lected in annotations in 150 A.L.R. 100, 121, and 17 A.L.R. 2d 968, 978-982.) There is here no proof that relator regarded his liquor store employment as a substitute for his municipal employment, except such probative value as may attach to the fact that the former terminated about the time of his reinstatement to the latter, and this scarcely serves to outweigh the fact that he performed the duties of both for a substantial period prior to the municipal discharge. Nor is there any showing of lack of diligence in seeking additional employment during the hours formerly occupied by the municipal work. We therefore conclude that where an employee simultaneously holds two compatible jobs and is wrongfully discharged from one, his employer may not set off the earnings from the remaining job against liability for lost wages in the absence of proof of a lack of diligence by the employee in seeking additional employment or that the remaining job was regarded as a complete substitute for the prior dual employment.

Defendants' final contention is that a *mandamus* action is an inappropriate remedy since the writ will not issue in the absence of a showing of a clear legal right thereto, and that the presence of an issue as to the amount due relator necessitated denial thereof. While relator maintains this defense was not raised in the trial court, and is not now available, we prefer to treat it on its merits.

The precise question here differs from that found in prior decisions of this court in which *mandamus* was held improper. An unreasonably extended opinion would result were we to analyze and distinguish each of the earlier cases, but it is apparent from a review thereof that *mandamus* was refused where a factual question existed or a separate determination of the basic rights was held necessary. Here we have no factual issue for determination since the amounts in question are either stipulated or undisputed. Relator's right to reinstatement has been previously and finally adjudicated in a separate proceeding. The sole issue presented

is one of law, and we hold it properly presented in this *mandamus* action. *People ex rel. Blachly* v. *Coffin,* 279 Ill. 401, 410; *People ex rel. Jacobs* v. *Coffin,* 282 Ill. 599.

We therefore conclude the Appellate Court was correct in its judgment, which is accordingly affirmed.

*Judgment affirmed.*