BOARD OF EDUCATION OF BERWYN SCHOOL DISTRICT NO. 100, COOK COUNTY, Plaintiff-Appellant and Cross-Appellee, *v.* GEORGE METSKAS *et al.*, Defendants-Appellees and Cross-Appellants.

First District (1st Division)    No. 81-1097

Opinion filed March 29, 1982.—Opinion modified May 10, 1982 and rehearing petitions denied May 10, 1982 and June 7, 1982.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago (Everett E. Nicholas, Jr., and S. Bennet Rodick, of counsel), for appellant.

Hirsh & Schwartzman, P. C., of Chicago (Wayne Schwartzman and Janet Harris Wolf, of counsel), for appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

The Board of Education of Berwyn School District No. 100 in Cook County (plaintiff), acting under section 24—1 *et seq.* of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 24—1 *et seq.*), dismissed George Metskas (defendant) from his position of orchestra teacher. A hearing officer of the State Board of Education ordered reinstatement. On administrative review this order was affirmed. Plaintiff appeals.

The evidence shows defendant was first employed in 1952. His duties pertained largely to the school orchestral program. He received salary increases from time to time as provided in the collective bargaining agreement between plaintiff and the South Berwyn Educational Association. In addition to regular teaching duties, defendant rendered additional services such as his special work with the student orchestra.

Defendant's compensation took into account his extra services in connection with teaching and rehearsals with the members of the school orchestra. For some years defendant received a 15% addition to salary and

a 5% addition for participation with the orchestra in an annual competition sponsored by a parents' club in the area. These additions were in the amount of approximately $2,500. However, the contract tendered defendant for the school year 1977-1978 shows a reduction in this additional salary for extra duties to $1,000. This step was unilaterally taken by the plaintiff. Defendant had no knowledge thereof until he received the contract.

It is agreed that the $1,000 addition in the new contract was for concert performances by students and participation in the orchestral contest. Defendant complained verbally to the school superintendent. This touched off a flurry of correspondence between defendant and the superintendent. The details of these letters need not be noted. The correspondence continued until the early part of 1978. Defendant finally refused to participate in the contest for solo members and the entire orchestra which was held on Saturday, February 25, 1978. It may readily be surmised that part of the difficulty reflected in this appeal resulted from a difference of opinion and perhaps in personality between defendant and plaintiff's superintendent of schools.

On December 14, 1977, plaintiff sent defendant a written notice of remediation directing defendant to perform his extra duties or face possible dismissal. This notice summarized the alleged failure and refusal of defendant to perform his duties and insubordination in that defendant failed to provide rehearsals for student participation in solo and orchestral competition and failed and refused to accompany students to the competition.

Defendant was ordered to appear at the solo and orchestra contests held on Saturday, February 25, 1978. He did not comply. Plaintiff dismissed the defendant by formal resolution on February 28, 1978.

The record shows a total of 10 charges specified in the dismissal. There was a considerable degree of duplication in these charges. However, on oral argument counsel agreed that all of the charges generally fall into two categories. First, there is a general charge that defendant was guilty of insubordination. Second, defendant is charged with harassing and intimidating students and parents with whom he came into contact.

■■ The second type of charge is clearly rebutted by the record. This matter is concerned with various alleged complaints by parents which allegedly demonstrate emotional strain on the parents and on the students. It is clear that the plaintiff did not act on these charges because the record shows the parents communicated with the superintendent of schools regarding these matters on the date defendant was dismissed. This was some 2½ months after the notice of remediation and consequently these allegations were not contained within the notice. We accordingly reject this group of charges as support for plaintiff's position. (Ill. Rev. Stat.

1979, ch. 122, par. 24—12; *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 332, 388 N.E.2d 398.) It remains to consider the issue of insubordination.

As indicated, the hearing officer and the trial court agree that the dismissal was improper. The findings of fact upon which the administrative body based its reversal of the dismissal are *prima facie* correct. (Ill. Rev. Stat. 1979, ch. 110, par. 274.) Additionally, the trial court in administrative review is duty bound to sustain the administrative findings unless they are "contrary to the manifest weight of the evidence." (*Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322, and authorities there cited.) The fact that a trial court might have drawn a different factual inference does not warrant a conclusion contrary to that reached by the administrative body. *Caterpillar Tractor Co. v. Industrial Com.* (1980), 81 Ill. 2d 416, 421, 410 N.E.2d 850.

The salient facts pertaining to the alleged insubordination are above set forth. However, the able trial judge reviewed the entire record and heard argument of counsel precisely as this court has done. The trial court expressly held that the hearing officer reached the correct decision that the action of defendant "was not insubordination so as to justify dismissal."

In this regard it must also be noted that a good part of the charge of insubordination is based upon the fact that at the height of the salary dispute defendant refused to be present when the solo and orchestra competitions were held. This took place on Saturday, February 25, 1978. As defendant correctly points out, the pertinent statute (Ill. Rev. Stat. 1979, ch. 122, par. 24—2), specifically provides that teachers "shall not be required to teach on Saturdays * * *." A question may be raised as to whether these orchestral activities are actually teaching or are best described as nonteaching duties. (See *District 300 Educational Association v. Board of Education* (1975), 31 Ill. App. 3d 550, 334 N.E.2d 165, *appeal denied* (1975), 61 Ill. 2d 597.) Defendant urges that his job description included participation in contests and conducting of the orchestra as part of his duties. In any event this raises a question regarding the efficacy of the charge of insubordination.

We should also consider whether or not the charges centering about alleged insubordination are remediable. In *Gilliland*, the supreme court defined remediable cause:

"The test in determining whether a cause for dismissal is irremediable is whether damage has been done to the students, faculty or school, and whether the conduct resulting in that damage could have been corrected had the teacher's superiors warned her." 67 Ill. 2d 143, 153.

In the case before us, the very fact that the plaintiff sent defendant a

notice of remediation would tend to indicate that the charges here are remediable. An analysis of the substance of some of the charges supports this result.

For example, the first charge is that defendant refused to follow written directives "to provide the instruction and practice sessions necessary for student participation in the solo and ensemble orchestra competition * * *."

In this regard the hearing officer found that all of the testimony was to the effect that these sessions were customarily performed by music instructors and not by the respondent. Charges 2 to 7 inclusive are directed to practice and rehearsal sessions necessary for the music contests. Here, the hearing officer found that defendant testified to the contrary and there was "no testimony whatsoever that such was not the case." We have already considered charges 8 to 10 inclusive. Charge 7, being failure to perform the duty to accompany the orchestra to the contest, has already been the subject of comment. The gravity of these charges must be considered in the light of the fact that the youth orchestra in question won second prize in the competition. We can best characterize the charge of insubordination by stating that in our opinion, if there was an element of insubordination it resulted from the unilateral reduction of defendant's salary for the next school year which in turn precipitated the somewhat acrimonious exchange of letters between defendant and the superintendent.

■■ Upon the consideration of the entire record, we are convinced that the findings and decision of the hearing officer are correct and are strongly supported by the evidence. We certainly cannot say that the affirmance of these findings by the able and experienced trial judge is against the manifest weight of the evidence. We can best characterize the administrative decision before us as being "just and reasonable in light of the evidence presented." (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.) Insofar as the order appealed from approves the administrative decision and directs the reinstatement of the defendant, it is affirmed.

■■ The trial court heard the evidence and found damages due the defendant in the amount of $31,200.12. We find the trial court properly decided this issue even though it had not been previously heard by the administrative body. (Compare Ill. Rev. Stat. 1979, ch. 122, pars. 24—12, 24—16; see also *Neal v. Board of Education* (1981), 93 Ill. App. 3d 386, 417 N.E.2d 217; *Miller v. Board of Education* (1968), 98 Ill. App. 2d 305, 309, 240 N.E.2d 471.) We will therefore consider plaintiff's arguments that damages were improperly awarded and defendant's cross-appeal that the damages awarded were insufficient.

In our opinion, the measure of damages applicable in the case of a nontenured teacher may also be applied in the case at bar. In *Bessler v. Board of Education* (1977), 69 Ill. 2d 191, 198-99, 370 N.E.2d 1050, the court stated the principle:

"The measure of damages is the salary provided in the contract [citation] reduced by such sums as the wrongfully discharged teacher has earned or by reasonable diligence could have earned in other employment subsequent to the discharge [citation]. The employer has the burden of showing that the employee could or did have other earnings subsequent to the wrongful discharge and that those earnings stemmed from employment incompatible with the employment from which he was wrongfully discharged. [Citation.]"

Plaintiff first contends defendant failed to exercise reasonable diligence in his pursuit of other teaching jobs. Plaintiff points to defendant's failure to contact either the State Board of Education or the Cook County Regional Superintendent and his failure to seek employment as a substitute teacher. Plaintiff contrasts defendant's testimony he contacted eight other music teachers to inquire about job openings with the efforts of the plaintiff in *Miller v. Board of Education* (1968), 98 Ill. App. 2d 305. In *Miller*, the court held the plaintiff had exercised reasonable diligence where he had written to 134 school superintendents. 98 Ill. App. 2d 305, 311.

■■ In our opinion, the trial judge correctly found due diligence here. Although the specific number of job contacts made by defendant was smaller than that of the plaintiff in *Miller*, our reading of that case and subsequent cases indicates no specific number of contacts is necessary to establish reasonable diligence. In this case, the trial court heard the testimony of the defendant as to his efforts in seeking employment. The trial court also heard defendant explain he did not pursue the contacts noted by plaintiff because he believed such efforts would be futile due to his discharge. The trial court was in a superior position to evaluate the credibility of the witness. We cannot say the ruling of the trial court that defendant did establish reasonable diligence is against the manifest weight of the evidence. *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 110, 382 N.E.2d 1205.

Plaintiff next argues any damages due defendant should be reduced by the sums defendant earned from employment as a musician in the years 1978 through 1980. The evidence showed defendant earned an average of approximately $2,765.31 as a musician in 1970 through 1978 but earned over $20,000 in 1979 and $14,000 through August 1980. Plaintiff urges the large increase in earnings during the period defendant did not teach indicates his job as a musician was "incompatible" with perfor-

mance of his duties to plaintiff. Plaintiff cites *People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 205 N.E.2d 470. Plaintiff therefore urges these earnings of defendant should offset whatever back pay defendant is to receive as damages.

■■■ In our opinion, the trial judge properly ruled the work performed by defendant as a musician was not incompatible with defendant's teaching position. The test for incompatibility is not the amount of earnings from the secondary employment. Rather, the test is whether there are "regulatory proscriptions or conflicting hours or duties" between the two jobs. (*People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 329.) As correctly noted by the trial judge, compatibility between the jobs here was shown in that defendant had worked as a musician throughout the years he was teaching. Defendant testified his duties as a musician continued to be compatible with teaching during the years as these duties were performed only on evenings or on weekends. Plaintiff, whose burden it is to prove the incompatibility of the jobs (*Bessler v. Board of Education* (1977), 69 Ill. 2d 191, 199), did not effectively rebut this testimony. We therefore affirm the finding of the trial judge that plaintiff is not entitled to an offset.

The trial judge awarded defendant full-time pay for the 1977-78 school year. Defendant was awarded only half-time pay for the 1978-79 and 1979-80 school years because the position defendant had held was reduced to a half-time position. In his cross-appeal, defendant urges he should have received full-time pay for all three years. Defendant contends such reduction was in violation of the tenure laws, and further notes he could have been assigned to teach additional half-time positions in the music department.

■■ We find no reason to alter the decision of the trial judge. As stated above, the measure of damages in this case is the amount which the teacher would have earned had he not been improperly dismissed. (See *Bessler v. Board of Education* (1977), 69 Ill. 2d 191, 198-99.) Thus, the issues in this case are not the actions of the school administration in the reduction of defendant's position nor the defendant's ability to fill more than one position in the music department. We therefore do not find the decision of the trial judge in this regard is against the manifest weight of the evidence.

■■ Defendant also contends he is entitled to extra-duty pay for the years 1977-78 and 1979-80. The question of extra-duty pay was, however, the subject of an arbitration decision included in the record before us. In that decision, defendant was specifically excluded from receiving extra-duty pay. No appeal was taken from that decision. Under the Illinois Uniform Arbitration Act (Ill. Rev. Stat. 1979, ch. 10, par. 101 *et seq.*), the decision is final and cannot be disturbed by this court. (See *Rosee v. Board of Trade*

(1976), 43 Ill. App. 3d 203, 239-40, 356 N.E.2d 1012, *appeal denied* (1977), 65 Ill. 2d 580, *cert. denied* (1977), 434 U.S. 837, 54 L. Ed. 2d 99, 98 S. Ct. 127.) This argument is therefore rejected. We also affirm the order appealed from concerning the right of defendant to seek a further back-pay award for years subsequent to 1980.

The judgment appealed from is therefore affirmed.

McGLOON and O'CONNOR, JJ., concur.