(No. 84-CC-0446–

ROBERT GANT, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed May 9, 1984.*

*Opinion filed March 4, 1993.*

JACQUELINE A. KINNAMAN, for Claimant.

ROLAND W. BURRIS, Attorney General (MITCHELL WILNEFF, Assistant Attorney General, of counsel), for Respondent.

## ORDER

KOE, C.J.

This cause coming before the Court on the joint stipulation of the Claimant and the Respondent, and the Court being fully advised in the premises finds:

This is a standard lapsed appropriation claim for back salary due Claimant as confirmed by the report of the Department of Corrections, dated October 19, 1983.

Salary is due Claimant for the period of November 10, 1978, through June of 1982, less $6,854 received as unemployment compensation from November 18, 1979, through September 20, 1980.

The appropriations, by line items, out of which this would have been paid are as follows: Fiscal years 1980, 1981 and 1982:

| | |
|---|---|
| Personal Services: | 001-42630-1120-00-00 |
| Retirement: | 001-42630-1161-00-00 |
| Social Security: | 001-42630-1170-00-00 |

It is hereby ordered that the sum of $42,324.28 plus employer contributions to the State Employees' Retirement System and/or FICA and minus deductions for appropriate employee payments for State Employees' Retirement Systems and/or FICA, and for Federal and State income taxes as shown in Appendix 1 attached hereto and made a part hereof be paid Claimant.

We note that this award only partially resolves the instant claim, as the parties wish to litigate the issues of recovery for vacation time and overtime. These matters will be ruled upon at a later date after the submission of evidence and briefs.

## APPENDIX A

Identification of the State Contributions and Deductions from Back Salary Award.

To the State Employees' Retirement System

| | |
|---|---|
| Employee's contribution to State Employees' Retirement System | $2,115.45 |
| Employee's contribution to FICA | 3,174.41 |
| State's contribution to State Employees' Retirement System | 3,150.55 |
| State's contribution to FICA | 3,174.41 |

To Illinois State Treasurer to be remitted to Internal Revenue Service:

| | |
|---|---|
| Claimant's Federal Income Tax | 8,464.86 |

To Illinois Department:

| | |
|---|---|
| Claimant's Illinois Income Tax | 1,269.73 |

To Office of Employment Security:

| | |
|---|---|
| Director Dept. of Labor | 6,854.00 |

To the Claimant:

| | |
|---|---|
| Net Salary | 20,445.83 |

Total Award $48,649.24

## OPINION

SOMMER, C.J.

Claimant Robert Gant filed this claim in August of 1983 seeking $57,043.73 in compensation for his wrongful discharge from his position with the Respondent's Department of Corrections (hereinafter referred to as DOC). He was suspended pending discharge on

November 8, 1979, after being indicted for burglary and actually discharged on December 8, 1979. The discharge was subsequently reversed and Claimant was ordered reinstated by the Civil Service Commission. That decision was ultimately upheld by the appellate court on June 30, 1982. The Claimant was reinstated on November 16, 1982.

Based on an agreement of the parties, the Court entered an interim award to the Claimant in the gross amount of $48,649.24 on May 9, 1984, for lost wages. Claimant also sought compensation for lost vacation time and overtime. The parties sought to litigate these issues at a later date and the Court reserved judgment thereon pending submission of evidence and briefs. That part of the case went to hearing on January 12, 1988. The Respondent was granted leave to file its brief on April 10, 1989, and did so. The Claimant has yet to file his brief. The Court has waited long enough.

The claim for payment for vacation days involves either 15 or 17 days (depending on which party's version is correct) which would have accrued during 1980 had Claimant been on the job then. After Claimant was reinstated he was credited by DOC with either 47.6 vacation days or 34 vacation days (or perhaps some number of days in between, again depending on which version is correct). Unlike the facts in the cases cited by the Respondent in its brief, the Claimant here did not lose the days for which claim is made during the time of his wrongful discharge. The days claimed were those earned in 1980 and which should have been credited to him on the day he was reinstated. The days were lost on the first day of the new year after reinstatement, January 1, 1983, pursuant to section 5 of article X of the collective bargaining agreements which were

in effect at all relevant times. That section provides as follows:

"Section 5. Vacation Schedules

Subject to Section 6 and the Employer's operating needs, vacations shall be scheduled as requested by the employee. In any event, upon request, vacation time must be scheduled so that it may be taken no later than twenty-four (24) months after the expiration of the calendar year in which such vacation time was earned. *If an employee does not request and take vacation within such 24-month period, vacation earned during such calendar year shall be lost.*" (Emphasis added.)

It is the Claimant's position that he is entitled to be paid for the lapsed vacation days pursuant to another provision of the collective bargaining agreement, section 7(a) of article X, which provides as follows:

"Section 7. Payment in Lieu of Vacation

a) If because of operating needs the Employer cannot grant an employee's request for vacation time within the 24-month period after expiration of the calendar year such time was earned, such vacation time shall be liquidated in cash at straight time provided the employee has made at least three requests for such time within the calendar year preceding liquidation, or it may be accumulated indefinitely subject to the provisions of this Article."

Insofar as the Court of Claims cases cited by the Respondent are relevant to this case, they acknowledge that the theory underlying damages for back salary is to make the employee whole—to compensate the employee to the extent that the discharge has caused a financial loss, as stated by the Illinois Supreme Court in *People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 205 N.E.2d 470. They also hold that it is incumbent upon the Claimant to establish he had a specific right to such compensation.

Claimant has established by competent evidence that between the time he was reinstated and the end of that year he lapsed vacation days he would have earned had he been working during 1980. No claim was made for any vacation days which may have arisen

more than 24 months prior to the start of the calendar year in which he was reinstated. As for Claimant's request to use those days, the following testimony by him was not rebutted:

"Q. And when did you return to work precisely, do you recall?

A. Approximately November 16th of '82.

Q. And when you returned to work, did you make any inquiries with regard to the amount of vacation time that you had credited to your personnel file?

A. Yes, I did.

Q. Who did you talk to?

A. I talk to my supervisor and the superintendent of Illinois Youth Center, St. Charles.

Q. And what did you ask them?

 ° ° °

THE WITNESS: I asked them how much time did I have since I came back to work and they told me that they didn't know. I said because I didn't want to lose any time, my time due to the new fiscal year coming in. After the fiscal year come in, then you lose a certain amount of your vacation time that you can only carry on the books so I asked quite frequently. They kept telling me, they kept telling me they didn't know, they didn't know so after the first of the year, after the first of the year, they told me I had to take 17 and a half vacation days because of the year that I couldn't carry them.

Q. All right. If they had told you that you had 17 days credited to your name as of the date you returned to work in November of 1982, would you have requested the opportunity to use those days before the end of the fiscal year?

A. Yes. I even asked about the date.

Q. And who did you ask?

A. Howard Peters, superintendent.

Q. And what did Mr. Peters tell you?

A. He told me that you didn't think that you was coming back to work and go on vacation, did you.

Q. Okay. In other words, was it Mr. Peters' position that you couldn't have used the days any way?

A. Sure.

Q. Now, based on your understanding of your right as an employee, what would have happened if you had not been given the opportunity to use those vacation days before January 1st of 1983?

A. If I had asked to use them, if I had asked to use them and they denied me the using of them, then they would have paid me for them."

From this testimony and elsewhere in the record, it appears that not only were Claimant's requests denied but that he was not even told about what time he was entitled to until after the time was gone. While the reaction of Superintendent Peters was understandable after Claimant's absence of nearly two years, Claimant was entitled to use the time or have the money. Anything else would be a deprivation of something he would have had as of the date of his reinstatement had he not been wrongfully discharged. To the extent that the personnel rules do not contain a provision corresponding to that in the collective bargaining agreement concerning liquidation in cash and thus may be construed as being in conflict with the contract, we find that not to be an issue where, as here, the Respondent violated the rules by not scheduling Claimant's time off after requests.

We find that Claimant is entitled to an award for the lapsed vacation days under these circumstances. As for the number of days for which he is to be compensated, the preponderance of the evidence is 15 days and a gross amount of $1,056.45.

The second damages issue involves the claim for payment for overtime. Claimant's position is that had he not been wrongfully discharged he would have worked overtime and in order to be made whole and not suffer any financial loss due to the wrongful discharge he should be paid for the overtime. The Respondent argues that any amount of overtime would be speculative, citing *Smith v. State* (1982), 35 Ill. Ct. Cl. 191.

In support of his case for overtime, Claimant introduced into evidence the provisions of the collective

bargaining agreement pertaining to overtime, a list of the employees at the DOC facility from which Claimant was discharged who held the same position as Claimant (correctional transportation officer), their seniority dates, their overtime hours worked, the Claimant's hourly rate of pay at all times relevant to the claim, and a statement of DOC policy concerning overtime. No witnesses were called to testify.

Overtime can be a recoverable element of damages in a wrongful discharge case. (*Tavoletti v. State* (1978), 32 Ill. Ct. Cl. 162.) However, the Court will not award overtime if to say that the employee would have earned it is speculative. (*Smith v. State* (1982), 35 Ill. Ct. Cl. 191.) The burden is on the Claimant to prove by the preponderance of the evidence that he would have earned pay for overtime but for the wrongful discharge.

The claimant in *Tavoletti, supra,* was employed by the Department of Transportation. Upon reinstatement after wrongful discharge he sought and was awarded compensation for overtime. The evidence in that case was that prior to his discharge he had earned a substantial amount of overtime for snow plowing and salting. There was testimony by the claimant that there was a substantial amount of overtime work on a recurring basis in each year of his employment during certain times of the year and the period of his discharge extended over those times of the year. In addition, the Court was able to take judicial notice of the climate in Illinois and the need for such work. The loss was not speculative. In *Smith, supra,* the Court concluded with no discussion of the evidence that the employee's claim for overtime was speculative.

In the case at bar, we find that the Claimant has failed to sustain his burden of proof on the overtime issue. While it is clear that under the terms of the bargaining agreement he would have had the opportunity to earn overtime during the period of discharge, and it is clear that his co-workers did earn overtime, working overtime was up to the employee's discretion and was not assigned on a mandatory basis unless all employees refused voluntary overtime assignments. There is nothing in evidence concerning the Claimant's overtime activities prior to his discharge as there was in *Tavoletti, supra*. There was no testimony by the Claimant or any other evidence to show that he would have worked overtime had he been given the opportunity. There was no evidence that the overtime worked by the others in his position was mandatory due to their unanimous refusal to voluntarily work overtime or that had he been on the job overtime would have been required.

It is hereby ordered that the Claimant be, and hereby is, awarded the gross sum of $1,056.45 plus appropriate employer contributions and less appropriate employee deductions as will be detailed at a later date in an appendix to be prepared by the clerk's office and incorporated herein.

## APPENDIX A

Identification of the State Contributions and Deductions from Back Salary Award.

To the State Employees' Retirement System

Employee's contribution to State
Employees' Retirement System 51.45

| | |
|---|---:|
| Employee's contribution to FICA $65.50 (6.2% S.S.) $15.32 (1.45% Medicare) | 80.82 |
| State's contribution to State Employees' Retirement System | 58.10 |
| State's contribution to FICA | 80.82 |

To Illinois State Treasurer to be remitted to Internal Revenue Service:

| | |
|---|---:|
| Claimant's Federal Income Tax | 211.29 |

To Illinois Department:

| | |
|---|---:|
| Claimant's Illinois Income Tax | 26.41 |

To the Claimant:

| | |
|---|---:|
| Net Salary | 679.83 |

Total Award $1,056.45