THOMAS CALABRESE, JR., Plaintiff-Appellee, v. CHICAGO PARK DISTRICT *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—96—2462

Opinion filed February 27, 1998.

Nelson A. Brown, Jr., of Chicago, for appellants.

Asher, Gittler, Greenfield, Cohen & D'Alba, Ltd., of Chicago (Stephen Feinberg, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:

Chicago Park District; Personnel Board of the Chicago Park District, its members, John Rogers, William Bartholomay, Margaret Burrows, Anita Cummings, Mona Castillo, Gerold Sullivan, and Michael Scott, and its general superintendent of employment, Becky Frederick; and Shappelle Smith appeal from a circuit court judgment affirming in part and reversing in part an administrative decision by the Personnel Board of the Chicago Park District (Personnel Board) regarding the suspension of plaintiff. First, defendants raise a threshold issue in arguing that the circuit court lacked jurisdiction to hear the appeal from the Personnel Board's decision. Defendants alternatively argue that the trial court's decision reversing the Personnel Board's administrative decision should be reversed, because the decision of the Personnel Board was not an abuse of discretion.

For the following reasons, we affirm the decision of the trial court in part and reverse in part. ·

## Statement of Facts

In 1989, plaintiff was a Chicago Park District (Park District) playground supervisor at Augusta Playground. On September 22, 1989, he was terminated by the Park District for leaving his assigned location without authorization, failing to follow proper time-keeping procedures and falsifying his time sheets. Plaintiff appealed to the Personnel Board, but the Personnel Board hearing did not take place until February 16, 1994, nearly 4½ years later.

On April 18, 1994, the Personnel Board hearing officer found that plaintiff was guilty only of failing to follow proper time-keeping procedures and recommended a 10-day suspension for plaintiff with back pay and benefits. In an oral decision on October 11, 1994, the Personnel Board adopted the hearing officer's recommendation to suspend plaintiff for 10 days, but denied him back pay and benefits for the five-year period he did not work. The Personnel Board's decision considered plaintiff's 10-day suspension "time already served," even though he had been suspended for nearly five years. Plaintiff was reinstated to his position and returned to work on November 7, 1994.

On November 14, 1994, plaintiff filed a "Motion To Reconsider The Board's Decision Denying Backpay And Benefits" with the Personnel Board. On that same date, plaintiff also filed a complaint in circuit court under section 3—111(a) of the Administrative Review Law. 735 ILCS 5/3—111(a) (West 1994).

The Personnel Board again heard plaintiff's case on February 22, 1995. On March 8, 1995, the Personnel Board issued a written decision in conformance with its earlier oral decision. The decision imposed a 10-day suspension, but considered it as "time already served." The order stated that the Personnel Board's decision could be reviewed only in the circuit court of Cook County.

After the issuance of the March 8, 1995, written decision, plaintiff filed an amended complaint. Both the original and the amended complaints sought review only of the portion of the Personnel Board's decision that denied him back pay and benefits, and not of the 10-day suspension.

Plaintiff moved for summary judgment. Defendants moved to dismiss the complaint in the circuit court based on lack of jurisdiction because the Personnel Board decision stated that the suspension was only for 10 days, and administrative review is available only for suspensions over 30 days under the Chicago Park District Act. 70 ILCS 1505/16a(c)(4)(J) (West 1994). On November 7, 1995, the trial court denied this motion and instead reversed the Personnel Board's final decision and remanded the case to the Personnel Board to

determine the amount of back pay, benefits and interest owed to plaintiff.

On remand, the Personnel Board conducted a back pay hearing on February 7, 1996. Plaintiff was the only witness who testified on the matter of mitigation of back pay damages. The parties stipulated that the gross back pay due to plaintiff without interest was $150,325.17 for 1989 to 1994. The evidence at the hearing showed that plaintiff worked for a messenger service following his discharge in 1989 through the first five months of 1990. After that, from 1990 through 1993, plaintiff worked as a Teamster "extra" forklift driver at McCormick Place Convention Center. The parties stipulated that plaintiff's earnings from this job should be deducted from his gross back pay as interim mitigation earnings.

At issue in this appeal is plaintiff's work as a real estate agent during and after his employment at the Park District. At the back pay hearing on remand, plaintiff testified to the following. Starting in 1979, and continuing for 10 years until his discharge in 1989, plaintiff worked as a real estate agent part-time, in addition to his full-time job at the Park District. Plaintiff's Park District schedule was five days per week, from 1 p.m. to 9 p.m. Plaintiff testified that he worked as a real estate agent in the mornings and on weekends.

While suspended from the Park District, plaintiff continued his real estate work. Evidence was introduced that, beginning in 1990 and through 1994, plaintiff listed his work in real estate sales as his occupation on his income tax returns. In 1990, plaintiff began working for a real estate company and intended at that point to make it his primary occupation. Plaintiff testified that later, in 1992, he was looking to pursue another career, and so he enrolled at Triton College.

From 1990 through 1992, on the days plaintiff was not working at McCormick Place as a Teamster forklift operator, he would commonly spend three to four days a week working in real estate, from five to eight hours a day. In 1993, plaintiff voluntarily left his employment with the Teamsters. At the hearing, plaintiff testified that he did not look for other employment in 1993 and 1994 because his primary occupation at that time was his real estate work. However, plaintiff testified that he could have earned the same amount from his real estate work from 1990 to 1994 had he still been working for the Park District.

Plaintiff testified that he also did not seek other work in 1994, besides his real estate work, partly because he thought he would be promptly reinstated after the Personnel Board hearing officer's recommendation on April 18, 1994, that he be reinstated at the Park District.

The parties stipulated that plaintiff's total unemployment compensation while he was on temporary lay-off from his Teamster's Union position during 1990-94 was $18,062. The Personnel Board deducted these unemployment benefits from plaintiff's back pay because he "did not engage in an active, good faith employment search while he was on lay-off status from his employment through the Teamsters [and] he put greater effort into expanding his self-employment as a real estate salesperson." The trial court affirmed this part of the Personnel Board's decision. Plaintiff voluntarily withdrew his cross-appeal of this ruling.

The Personnel Board granted in part and denied in part plaintiff's claim for back pay and benefits, awarding him a total of $44,824.41. The Personnel Board issued the final administrative decision with a supporting memorandum on February 21, 1996. The cash settlement awarded by the Personnel Board included $11,033.28 in interest, which was calculated at a prejudgment interest rate of 6% *per annum* based on the total back pay due after mitigation. The settlement amount included $323.31 in court filing costs. The Personnel Board also credited plaintiff with personal time, sick time, and vacation time equivalent to five years' worth of these benefits.

After the Personnel Board's decision on remand, plaintiff appealed again, seeking administrative review in circuit court. Plaintiff was granted leave to file a supplemental complaint on March 21, 1996, challenging most of the Personnel Board's rulings on the issues of back pay and benefits. Oral arguments to the circuit court were held on June 21, 1996.

Defendants again moved to dismiss the case for lack of subject matter jurisdiction based on the fact that the face of the order stated that the suspension was only for 10 days. However, the trial court denied the renewed motion. The trial court affirmed in part and reversed in part the Personnel Board's decision on remand, awarding plaintiff $101,062.64 plus $321.31 in costs. The final judgment order was entered on July 3, 1996. Defendants appeal from this judgment.

After filing this appeal, defendants filed a motion to dismiss based on lack of subject matter jurisdiction, arguing that the circuit court never had jurisdiction to hear the case because the Chicago Park District Act provides for administrative review only of suspensions over 30 days, and the Chicago Park District Personnel Board's decision stated that the suspension was only for 10 days. In his response to this motion, plaintiff argued that this issue should be reviewed as part of the appeal. On April 16, 1997, this court entered an order that defendants' motion be taken with the case. Thus, the motion to dismiss for lack of jurisdiction is considered as part of this appeal.

Plaintiff initially filed a cross-appeal challenging the portion of the Personnel Board's decision that credited him with vacation, sick and personal days rather than giving him back pay for these days. However, plaintiff voluntarily withdrew the cross-appeal. Only defendants' appeal and motion to dismiss are before this court.

## Discussion

The threshold issue in this case is whether the Administrative Review Law is applicable where the oral and written order of the Personnel Board suspended plaintiff for less than 30 days, but plaintiff was actually out of work for approximately five years.

Defendants maintain that the circuit court lacked jurisdiction to hear the case because the face of the Chicago Park District's final administrative order suspended plaintiff for only 10 days, while the Administrative Review Law applies only to suspensions of more than 30 days. Defendants move this court to vacate the circuit court's judgment and remand the case to the circuit court so that plaintiff's complaint seeking administrative review could be dismissed.

■ The Chicago Park District Act (the Act) makes the Administrative Review Law applicable to an administrative decision of the Chicago Park District regarding discharges and suspensions. The Act provides the following: "All final administrative decisions by the personnel board discharging or suspending, for *more than 30 days*, an employee \*\*\* are subject to judicial review under the Administrative Review Law." (Emphasis added.) 70 ILCS 1505/16a(c)(4)(J) (West 1992).

The problem in this case is that it took the Personnel Board five years to reach a final decision, during which time plaintiff was suspended without pay. The final decision by the Personnel Board which imposed a 10-day suspension relegated this case to the category of administrative decisions unappealable under the Administrative Review Law.

■ Whether, and to what extent, action by an administrative agency is reviewable is a question of statutory interpretation. *Hanrahan v. Williams*, 174 Ill. 2d 268, 273, 673 N.E.2d 251 (1996). "While most agency actions are presumed reviewable, no presumption arises if there is a statutory bar to review or if statutory language commits the agency decision to unreviewable agency discretion." *Hanrahan*, 174 Ill. 2d at 273. Factors to consider in determining whether the relevant statute precludes judicial review of the administrative decision include the statute's express language, the structure of the statutory scheme, the statute's objectives, legislative history, and the nature of the administrative action involved. *Hanrahan*, 174 Ill. 2d at 273.

■ The Administrative Review Law has two principal objectives: (1) to eliminate conflicting and inadequate common-law and statutory remedies for judicial review of decisions of administrative agencies and substitute a single, uniform, and comprehensive remedy; and (2) to make available to persons aggrieved by administrative decisions a judicial review consistent with due process standards without unduly restricting the exercise of administrative judgment and the discretion essential to the effective working of the administrative process. *Orlowski v. Village of Villa Park Board of Fire & Police Commissioners*, 273 Ill. App. 3d 42, 46-47, 652 N.E.2d 366 (1995).

Given the objectives of the Administrative Review Law, judicial review is not precluded in the instant case. Rather, given the unusual facts of this case, administrative review should apply. Here, defendants would have this court vacate the judgment of the circuit court and remand the case with directions to dismiss plaintiff's appeal from the decision of the Personnel Board. However, jurisdiction should be implied in the circuit court, and thus in this court, where the Chicago Park District's grievance procedure for a 10-day suspension is inadequate to review a complaint for back pay for what amounted to a five-year wrongful termination.

The Chicago Park District Act provides the following:

"Any employee with career service status shall be discharged or suspended without pay for more than 30 days only for cause and only upon written charges for the discharge or suspension. The employee shall have an opportunity to appeal the action to the personnel board and to receive a hearing before the personnel board or a hearing officer appointed by it. The district may suspend, without pay, the charged employee pending a hearing and determination of an appeal by the personnel board. All final administrative decisions by the personnel board discharging or suspending, for more than 30 days, an employee with career service status are subject to judicial review, under the Administrative Review Law." 70 ILCS 1505/15a(c)(4)(J) (West 1994).

There is no provision, either in the Act or in the Personnel Code for Career Service for the Chicago Park District (Personnel Code), for a minimum or maximum time limit on how long the Personnel Board may take in reaching a final decision.

In addition, there is limited case law on point. However, the case that is the most similar to the instant case is *Kutz v. Merit Comm'n*, 168 Ill. App. 3d 508, 522 N.E.2d 794 (1988). The plaintiff in *Kutz*, an employee of the Department of Personnel of the Office of the Secretary of State (the Department), was suspended from his position for 29 days. The plaintiff attempted to obtain a hearing before the Merit

Commission of the Secretary of State (Merit Commission), but the Department's personnel rules provided that an employee could obtain a hearing before the Merit Commission only if he or she was suspended for 30 days or more. *Kutz*, 168 Ill. App. 3d at 510. The Merit Commission thus dismissed the plaintiff's appeal. *Kutz*, 168 Ill. App. 3d at 510. The circuit court dismissed the complaint on the theory that if the Merit Commission did not have jurisdiction to hear the appeal, then the circuit court did not have jurisdiction either. *Kutz*, 168 Ill. App. 3d at 510. This court held that the circuit court should have heard the administrative review complaint, but should have affirmed the Merit Commission's dismissal of the appeal. *Kutz*, 168 Ill. App. 3d at 510. This court declined to imply jurisdiction in the Merit Commission where there existed an adequate grievance procedure, consisting of a three-step process for suspensions of less than 30 days. *Kutz*, 168 Ill. App. 3d at 512-13. The relevant statute in *Kutz* made no express statement that suspensions of less than 30 days were reviewable, but this court held that the implication of the statutory scheme was that such suspensions were reviewable. *Kutz*, 168 Ill. App. 3d at 512. This court also held that, even though the Merit Commission lacked jurisdiction, the circuit court had jurisdiction to review the Merit Commission's order, and this court had jurisdiction to review the circuit court's decision. *Kutz*, 168 Ill. App. 3d at 516.

The court in *Kutz* declined to imply jurisdiction in the Merit Commission because there was an adequate grievance procedure for suspensions of less than 30 days. *Kutz*, 168 Ill. App. 3d at 512. The review of such suspensions was conducted in a three-step process. *Kutz*, 168 Ill. App. 3d at 512-13.

■ Here, on the contrary, there is ample indication that the grievance procedure of the Park District is inadequate to address the unusual factual situation presented by the instant case. The grievance procedure provides no redress for an employee who is suspended for longer than 30 days, but the final order issued by the Personnel Board is for a suspension of less than 30 days. Here, plaintiff was suspended, without pay, for five years. Under a commonsense analysis, the Administrative Review Law cannot be circumvented in the manner suggested by the defendants. Five years simply is not equal to 10 days. To hold otherwise would allow public entities to circumvent judicial review of their administrative decisions by imposing a retrospective punishment of less than 30 days for any wrongful disciplinary action against an employee, even if the employee was out of work for years.

Under the circumstances presented by this unusual factual situation, we find that the Chicago Park District Act's provision for a

hearing before the Personnel Board was inadequate. Thus, jurisdiction should be implied under the Administrative Review Law. Therefore, we proceed to review the Personnel Board's decision.

■ Defendants argue that the trial court exceeded its authority in crafting its own relief for plaintiff, rather than remanding the case to the Personnel Board for further proceedings. However, this argument is unpersuasive because circuit courts have the authority, under the Administrative Review Law, to do the following:

"(5) to affirm or reverse the decision in whole or in part;

* * *

(8) in case of affirmance or partial affirmance of an administrative decision which requires the payment of money, to enter judgment for the amount·justified by the record and for costs, which judgment may be enforced as other judgments for the recovery of money." 735 ILCS 5/3—111(a)(5), (a)(8) (West 1994).

Here, the trial court affirmed in part and reversed in part the Personnel Board's decision. The trial court did not exceed its authority under the Administrative Review Law. Also, the question of whether a trial court should remand a case to the administrative tribunal that rendered a decision for further hearings is a matter that lies within the discretion of the trial court. *Caliendo v. Martin*, 250 Ill. App. 3d 409, 419, 620 N.E.2d 1318 (1993). The trial court's decision to partially affirm and partially reverse, rather than remand the case, was not an abuse of discretion.

■ Defendants argue that the trial court's judgment should be reversed and that the case should be remanded so that the Personnel Board's decision could be affirmed by the circuit court. However, there is no need to remand the case because "[a] final decision, order, or judgment of the Circuit Court, entered in an action to review a decision of an administrative agency, is reviewable by appeal as in other civil cases." 735 ILCS 5/3—112 (West 1994).

■ An appellate court's role is to review the administrative decision, not the circuit court decision. *Denton v. Civil Service Comm'n*, 277 Ill. App. 3d 770, 773, 661 N.E.2d 520 (1996). If an administrative order is contrary to the manifest weight of the evidence, it is our duty to set aside the order. *Jones v. Illinois Department of Employment Security*, 276 Ill. App. 3d 281, 285, 657 N.E.2d 1141 (1995).

■ Upon review of administrative decisions, the findings and conclusions of an administrative agency on questions of fact are considered *prima facie* true and correct. *Jones*, 276 Ill. App. 3d at 284. An administrative agency's findings will not be disturbed on review unless such findings are against the manifest weight of the evidence, after viewing the evidence in a light most favorable to the

agency. *Jones*, 276 Ill. App. 3d at 284. An administrative decision is against the manifest weight of the evidence only if no rational trier of fact could have agreed with the agency's decision. *Jones*, 276 Ill. App. 3d at 284. If there is any evidence that fairly supports the administrative agency's action, the decision is not against the manifest weight of the evidence and must be affirmed. *Jones*, 276 Ill. App. 3d at 284. However, "as deferential as this standard of review is, it 'does not permit Illinois courts to automatically place a stamp of approval on the findings of the agency merely because [the] agency heard the witnesses and made the requisite findings.' " *Jones*, 276 Ill. App. 3d at 285, quoting *Viera v. Illinois Racing Board*, 65 Ill. App. 3d 94, 99, 382 N.E.2d 462 (1978). Thus, we proceed to review the Personnel Board's decision.

The Personnel Board, in its administrative decision, found that plaintiff's self-employment as a real estate agent from 1990 to 1994 was incompatible with his full-time employment as a playground supervisor and thus offset plaintiff's back pay award by his real estate income. The Personnel Board also deducted plaintiff's back pay damages for April 18, 1994, to November 7, 1994, for failure to mitigate damages. The Personnel Board awarded a rate of prejudgment interest at 6% *per annum*. The Personnel Board awarded plaintiff a credit of his back benefit time, instead of the cash value of those benefits. Finally, the Personnel Board awarded plaintiff his pension contribution based on gross back pay after mitigation, rather than premitigation.

The trial court partly reversed and partly affirmed the Personnel Board's decision in the following respects. The trial court reversed the portion of the Personnel Board's decision deducting $36,812 of plaintiff's real estate income from his back pay award as interim mitigation earnings and ruled that none of that income should be deducted from the back pay award. The trial court affirmed the Personnel Board's decision to deduct $18,062 in unemployment benefits paid during lay-offs in his interim employment as a Teamster "extra" from plaintiff's back pay award. The trial court affirmed the Personnel Board's selection of a 6% interest rate for the back pay award, but reversed the Personnel Board's decision to compute the interest as *per annum* and ruled that the interest rate should be compounded. The trial court vacated the Personnel Board's decision to impute $17,356.50 as interim earnings in 1994 for plaintiff's failure to mitigate damages and ruled that only $7,500 should be imputed as interim mitigation earnings. The trial court affirmed the Personnel Board's decision to credit plaintiff's account with personal days, sick days, and vacation days, rather than paying him the cash

value. Finally, the trial court reversed the Personnel Board's calculation of plaintiff's back pay pension benefits on the basis of gross back pay due after mitigation deductions and ruled that the pension benefits should be awarded based on the gross back pay due before deductions for interim earnings.

We affirm the trial court's decision, except as to the calculation of prejudgment interest as 6% compounded. We reverse that portion of the trial court's decision and hold that the Personnel Board's calculation of prejudgment interest as 6% *per annum* was correct.

Each of the findings of the Personnel Board raised on appeal will be analyzed separately.

First, the Personnel Board's ruling that the Park District could offset plaintiff's back pay by his real estate income was in error.

■ The amount recoverable by a wrongfully discharged employee is to be reduced by the other earnings during that period "insofar as such income would have been incompatible with performance of his duties to his erring employer." *People ex rel. Bourne v. Johnson,* 32 Ill. 2d 324, 329, 205 N.E.2d 470 (1965). The test for incompatibility is not the amount of earnings from the secondary employment but, rather, whether there are "regulatory proscriptions or conflicting hours or duties" between the primary and secondary jobs. *Bourne,* 32 Ill. 2d at 329; *Board of Education of Berwyn School District No. 100 v. Metskas,* 106 Ill. App. 3d 943, 949, 436 N.E.2d 587 (1982).

■ Here, plaintiff worked his real estate job in the mornings and on the weekends before he was suspended, and the hours he spent on that work did not substantially increase afterwards. Such a schedule was not inconsistent with working five days a week at the Park District, from 1 to 9 p.m. Thus, as plaintiff's real estate work was not incompatible with his duties as a playground supervisor, no amount of plaintiff's real estate income earnings should be used to reduce the amount of his back pay award.

Both defendants and plaintiff discuss the fact that plaintiff was a real estate agent during the time he worked for the Park District prior to his discharge, and defendants also refer to various "dual employment" documents prior to plaintiff's discharge. This time frame is irrelevant, however, to the issue of whether plaintiff's real estate work after his discharge increased to the point where it was inconsistent with his duties to the Park District such that offsetting plaintiff's back pay award was warranted. See *Bourne,* 32 Ill. 2d at 329; *Metskas,* 106 Ill. App. 3d at 948-49.

Plaintiff's comparison of the relative incomes earned at his messenger service job, Teamster position at McCormick Place, and his real estate work is likewise misplaced. The amount of income from

his work as a real estate agent is irrelevant to the issue of whether that work was incompatible with his Park District work. *Metskas*, 106 Ill. App. 3d at 949.

The instant case is similar to plaintiff's cited case, *Board of Education of Berwyn School District No. 100 v. Metskas*, 106 Ill. App. 3d 943, 436 N.E.2d 587 (1982). *Metskas* held that the defendant's work as a musician was not incompatible with his teaching position where he had worked as a musician throughout the years he had been teaching. *Metskas*, 106 Ill. App. 3d at 949. In *Metskas*, the defendant testified that, even after he was discharged, his work as a musician continued to be compatible with teaching because he performed only on evenings or weekends. *Metskas*, 106 Ill. App. 3d at 949.

██ Similarly, here plaintiff's real estate work continued to be compatible with his work as a playground supervisor because he primarily worked on mornings and weekends. The burden falls on the employer, not the discharged employee, to prove the amount of mitigation earnings in order to reduce the damage award. *Bourne*, 32 Ill. 2d at 329. The Personnel Board's finding that plaintiff's employment as a real estate agent from 1990-94 was incompatible with his employment as a Park District playground supervisor was against the manifest weight of the evidence. Thus, the portion of the trial court's decision reversing the Personnel Board on this issue is affirmed.

██ Second, the trial court's ruling that only $7,500 should be deducted from plaintiff's back pay award for failure to mitigate damages for the period April 18, 1994, to November 7, 1994, is affirmed because the Personnel Board's decision to impute $17,356.50 as interim earnings was not supported by the evidence.

A wrongfully discharged employee must act to mitigate his damages by seeking similar employment, and his damages will be reduced by those sums that he could have earned through the exercise of reasonable diligence in seeking employment. *Arneson v. Board of Trustees*, 210 Ill. App. 3d 844, 851-52, 569 N.E.2d 252 (1991).

Here, the Personnel Board hearing officer recommended on April 18, 1994, that plaintiff be reinstated at the Park District. The Park District did not reinstate plaintiff until November 7, 1994, even though the Park District itself agreed plaintiff should only have been suspended for 10 days. The Park District failed to meet its burden under *Bourne* of proving that plaintiff's earnings during this period would have been $17,356.50. See *Bourne*, 32 Ill. 2d at 329. Nothing in the record indicates that the trial court's determination of $7,500 as imputed mitigation earnings was against the manifest weight of

the evidence. Therefore, we affirm this portion of the trial court's decision.

■ Third, the Personnel Board applied a 6% interest rate in the computation of the entire back pay award, to be computed *per annum*. Plaintiff withdrew his cross-appeal of the portion of the Personnel Board's ruling selecting 6%. The trial court affirmed the 6% rate, but reversed the portion of the Personnel Board's order that applied this rate *per annum*, and instead ordered the Park District to pay interest at 6% compounded.

Here, the Personnel Board did not abuse its discretion in awarding an interest rate of 6% *per annum*. The Interest Act (815 ILCS 205/2 (West 1994)) provides for a prejudgment interest rate of 5%. The Interest Act applies to creditors. 815 ILCS 205/2 (West 1994). However, prejudgment interest may be awarded where the amount due is liquidated and readily ascertainable, as it is here. 815 ILCS 205/2 (West 1994). See *Dow v. Columbus-Cabrini Medical Center*, 274 Ill. App. 3d 653, 659, 655 N.E.2d 1 (1995) (where this court applied the prejudgment interest provision of the Interest Act in a suit by an employee against his former employer for the value of his unused sick-day time). The award of prejudgment interest at a rate of 6% *per annum* is not an abuse of discretion. See *Licciardi v. Collins*, 180 Ill. App. 3d 1051, 1064, 536 N.E.2d 840 (1989) (where an award of 5% prejudgment interest, rather than 6.74% compounded daily, was not an abuse of discretion).

Also, the Personnel Board did not abuse its discretion in partially relying on the postjudgment interest statute (735 ILCS 5/2—1303 (West 1994)). In its ruling, the Personnel Board recognized that there is no specific statutory provision governing the award of prejudgment interest on back pay in a case of wrongful suspension or discharge. Therefore, the Personnel Board looked to section 2—1303 of the Code of Civil Procedure for guidance because it "represent[s] a statement by the Legislature addressing what interest should be charged against a public body such as the Park District when a judgment has been entered against it." The Personnel Board properly looked to section 2—1303 in an attempt to ascertain legislative intent and properly awarded an interest rate of 6% *per annum*. There is no relevant statutory provision requiring a different calculation of the interest rate.

Thus, plaintiff has not shown that the Personnel Board's decision to compute the interest rate *per annum* is an abuse of discretion and, further, has not pointed to relevant authority that would mandate a different ruling. Therefore, the computation of the interest rate at 6% *per annum* should have been affirmed by the trial court. We reverse the trial court's decision in this respect.

■ Finally, the Personnel Board awarded plaintiff an amount of pension contributions based on his gross back pay after deducting interim earnings and imputed earnings due to failure to mitigate. The trial court held that these pension contributions should have been computed based on plaintiff's back pay before deductions for interim earnings. We affirm the trial court.

Neither defendants nor plaintiff cites to any authority that is on point. The Chicago Park District Act does not cover this issue. However, the guiding principle is that a wrongfully discharged employee should be placed as close to the position he would have occupied had he not been discharged, no better, no worse. *Glenn v. City of Chicago*, 256 Ill. App. 3d 825, 839 (1993). *Glenn* cited *Clark v. Human Rights Comm'n*, 141 Ill. App. 3d 178 (1986), which defined "whole" as "meaning that it should put the claimant in the position he or she would have been in respecting salary, raises, sick leave, vacation pay, *pension benefits* and other fringe benefits, but for the discriminatory act." (Emphasis added.) *Clark*, 141 Ill. App. 3d at 182. Further, "ambiguities should be resolved against the discriminating employer, since the employer's wrongful act gave rise to the uncertainty." *Clark*, 141 Ill. App. 3d at 183.

Because plaintiff's pension contributions would have been calculated based on his gross pay, he is entitled to have his back pay pension contributions calculated based on his gross back pay before deducting $7,500 in imputed interim earnings in 1994 for plaintiff's failure to mitigate and before deducting the monies earned as a Teamsters "extra" or the monies received from unemployment compensation while on layoffs from the Teamsters job. This is especially appropriate since plaintiff earned no credit toward any pension from any of these interim mitigation earning sources.

For the above reasons, we affirm the judgment of the circuit court in part and reverse in part.

Affirmed in part and reversed in part.

CAMPBELL, P.J., and GREIMAN, J., concur.